JACK A. FROST, APPELLEE, V. JEAN V. FROST, APPELLANT.
418 N.W.2d 220

Filed January 22, 1988.    No. 85-959.

Donald B. Fiedler of Fiedler Law Offices, for appellant.

Steven J. Lustgarten of Lustgarten & Roberts, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

This is an appeal in a proceeding for the dissolution of a marriage. The petitioner, Jack A. Frost, and the respondent, Jean V. Frost, were married on June 8, 1978. No children were born as a result of the marriage, but both of the parties have children from prior marriages.

The petition for dissolution of the marriage was filed on April 4, 1985. Trial was had on August 5, 1985, and a decree entered on September 12. The trial court found that the marriage should be dissolved, and divided the marital property and the debts of the parties.

The respondent has appealed and contends that the trial court erred in awarding $282,247 as premarital assets to the petitioner and failing to award any premarital assets to the respondent; in making a division of property that was patently unfair and not just or equitable under the circumstances; in failing to consider that the respondent had significantly cared for premarital assets awarded to the petitioner and contributed to their improvement and operation; in assigning a significantly larger share of the debts to the respondent, while awarding her a significantly smaller share of the marital assets; and in failing to award alimony to the respondent.

Our review of a trial court's judgment relating to the dissolution of a marriage is

> de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Gerber v. Gerber*, 225 Neb. 611, 617-18, 407 N.W.2d 497, 502 (1987). See, also, *Seemann v. Seemann*, 225 Neb. 116, 402 N.W.2d 883 (1987); *Busekist v. Busekist*, 224 Neb. 510, 398 N.W.2d 722 (1987).

During the marriage both parties were employed as real

estate agents. The respondent's net income from 1979 through 1984 was $127,182.57; the petitioner's net earnings for the same period were about $85,799.46. The parties apparently contributed $1,350 each per month, from which house payments and other living expenses were paid.

The respondent first complains that the trial court erred when it excluded $282,247 from the marital estate and set off that amount of money to the petitioner as premarital assets. The respondent also claims that the trial court erred in failing to set off to her the value of three parcels of real estate owned by her prior to the marriage.

Neb. Rev. Stat. § 42-365 (Reissue 1984), relating to the division of property, provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities . . . .

> While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

In *Blaser v. Blaser*, 225 Neb. 104, 107, 402 N.W.2d 875, 877 (1987), we stated that "property divisions are not subject to a rigid mathematical formula. The division must, most of all, be reasonable."

In a number of cases we have discussed the rules applicable to the treatment of property brought into the marriage and property received by gift or inheritance during the marriage.

In *McCollister v. McCollister*, 219 Neb. 711, 715, 365 N.W.2d 825, 828 (1985), we stated:

In an action for dissolution of marriage, the rules for determining the division of property owned by the parties, including that owned at marriage and acquired by gift or inheritance, provide no mathematical formula by which such awards can be precisely determined. Such awards are to be determined by the facts in each case.

See, also, *Applegate v. Applegate*, 219 Neb. 532, 365 N.W.2d 394 (1985); *Lord v. Lord*, 213 Neb. 557, 330 N.W.2d 492 (1983); *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980).

In *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 733, 325 N.W.2d 832, 834 (1982), we said:

While we have not heretofore said in exact words how property acquired by inheritance or gift during the marriage should be considered, an examination of our previous decisions discloses that when awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. . . . An exception to the rule is where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.

In *Ross v. Ross*, 219 Neb. 528, 531, 364 N.W.2d 508, 509 (1985), we reaffirmed the *Van Newkirk* holding, and added that "if the inheritance can be identified, it should be set off . . . and eliminated from the marital estate to be divided."

However, in *Grace v. Grace*, 221 Neb. 695, 699, 380 N.W.2d 280, 284 (1986), we reflected on the *Van Newkirk* rule and stated that "[t]he *Van Newkirk* rule itself does not purport to be an ironclad, rigid rule for all circumstances." We also cited *Ulmer v. Ulmer*, 205 Neb. 351, 287 N.W.2d 685 (1980), in which we stated that " '[w]hile the source of funds brought into a marriage is a consideration in the division of property, it is not an absolute.' " *Grace* at 701, 380 N.W.2d at 285.

The trial court, in dividing the property and the debts, generally followed the division set out in exhibit 10, a proposal submitted by the petitioner and received in evidence. The following chart, reproduced in part from the appellant's brief, summarizes how the property was divided:

| ITEM | VALUE | DECREE EXCLUDES FROM MARITAL ESTATE | | DECREE INCLUDES IN MARITAL ESTATE | |
|---|---|---|---|---|---|
| | | JACK | JEAN | JACK | JEAN |
| 12376 Rose Lane | $169,900 | $ 41,048 | – – – | $128,852 | – – – |
| 12318 Decatur | 84,000 | 84,000 | – – – | – – – | – – – |
| 3316 Harrison | 50,000 | – – – | – – – | – – – | $50,000 |
| 6235 Wilson Circle | 33,000 | – – – | – – – | – – – | 33,000 |
| Anchor [Annuity] | 16,249 | 16,249 | – – – | – – – | – – – |
| Money Market | 19,700 | 19,700 | – – – | – – – | – – – |
| Bellevue Queen | 64,000 | 64,000 | – – – | – – – | – – – |
| New Co. Investment | 500 | 500 | – – – | – – – | – – – |
| Dupont | 4,250 | 4,250 | – – – | – – – | – – – |
| Wreco, Inc. | 2,500 | 2,500 | – – – | – – – | – – – |
| Life Ins. Cash Value | 2,116 | – – – | – – – | 2,116 | – – – |
| 1968 V.W. Kit Car | 7,500 | – – – | – – – | 7,500 | – – – |
| 1985 Chrysler | 9,000 | – – – | – – – | 9,000 | – – – |
| 1976 V.W. | 1,100 | | | | 1,100 |
| 1983 Audi | 9,000 | | | | 9,000 |
| Stock | 10,525 | – – – | – – – | 10,525 | – – – |
| Household Goods | 20,000 | – – – | – – – | 10,000 | 10,000 |
| Aloha Club | 7,500 | – – – | – – – | – – – | 7,500 |
| Fur Coats | 2,000 | – – – | – – – | – – – | 2,000 |
| Re-Max | 2,500 | – – – | – – – | – – – | 2,500 |
| Keener Note | 50,000 | 50,000 | – – – | – – – | – – – |
| TOTALS | $520,340 | $282,247 | – – – | $167,993 | $115,100 |

An exhibit which was attached to exhibit 10 summarizes the division of the debts:

| | CREDITOR | BALANCE | DUE DATE | PAYMENT |
|---|---|---|---|---|
| (¹/₂) | Occidental Savings & Loan | $84,500.00 | monthly | $1,090.00 |
| (R) | Citicorp (2nd mortgage) | 28,300.00 | monthly | 350.00 |
| (P) | Norwest Bank | 10,000.00 | monthly | 297.00 |
| (P) | Omaha National Bank | 45,000.00 | interest monthly | 450.00 + |
| (¹/₂) | Nebraska Natl (1984 Taxes for 12376 Rose Lane) | 2,507.00 | monthly | 223.00 |
| (¹/₂) | J.S. Stite Co. (clean carpets and wash windows to prepare house for sale) | 125.00 | now | 125.00 |
| (¹/₂) | Keith Phillippi (painting home to prepare for sale) | 710.00 | now | 710.00 |
| (35%P 65%R) | IRS, 1984 (due 8/15/85) | 8,886.00 | 8/15/85 | 8,886.00 |
| (35%P 65%R) | Nebraska Dept. of Revenue, 1984 (due 8/15/85) | 626.00 | 8/15/85 | 626.00 |
| (¹/₂) | Pat Jones, preparation of 1984 income tax) | 155.00 | now | 155.00 |
| (R) | Visa | 1,500.00 | now | 1,500.00 |
| (R) | 1st Federal Lincoln (3316 Harrison) | 12,000.00 | monthly | |
| (¹/₂) | IRS and Nebraska Department of Revenue, refiguring of tax in their favor | 900.00 | now | 900.00 |
| (R) | American Charter, 6235 Wilson Circle | 21,600.00 | monthly | |

The first item the respondent claims was erroneously excluded from the marital estate was $41,048, which the petitioner claims were premarital funds he used for 12376 Rose Lane, the residence of the parties during a portion of their marriage.

On cross-examination the petitioner testified that the source of these funds was as follows: $16,070.43 paid for the lot, including $500 from an investment account and the balance from proceeds of the sale of property at 1506 North 123d Street that had been purchased on October 1, 1977; $4,000 from proceeds of the sale of a liquor store bought with funds from the sale of a one-half interest in the Bertram Apartments, purchased in 1959; and $21,048 credit from Bob Cleary Builder, Inc., "based on his memo of August the 8th, 1980."

The petitioner further explained that he had a credit from a joint account with Bob Cleary Builder, Inc., that was closed out for $5,563.29, which predated the marriage, and that Cleary owed the petitioner $10,590.55 on a note which was allowed as a credit against the costs of the home.

Although the petitioner's testimony was uncontradicted, there is nothing in the record to show the source of the funds in the investment account and the transaction represented by the Cleary note. The burden of proof was on the petitioner to show the source of all funds claimed as premarital, and we find the petitioner failed to prove that he was entitled to claim $41,048 from the sale of the Rose Lane property. We find that the amount should be reduced from $41,048 to $25,133.72.

The petitioner owns an annuity policy issued by Anchor National Life Insurance Co. Prior to the marriage he owned a Security Mutual benefit pension, which he valued at $8,166 in a property statement on February 12, 1978. He claims that was rolled into the Anchor policy, which is now worth $16,249. The petitioner claims no additional premiums were paid during the marriage and that the increase in value was the result of appreciation in value. This testimony was uncontradicted.

The petitioner claims that the money market account was funded with the balance of the proceeds from the sale of the liquor store purchased with proceeds from the sale of the Bertram Apartments.

The petitioner was awarded du Pont stock, valued at $4,250, and an interest in the "Bellevue Queen," a restaurant, valued at $64,000. The Bellevue Queen was listed on property statements commencing February 12, 1978, but the du Pont stock was not listed prior to March 1982. The petitioner, however, testified

that he owned the du Pont stock prior to the marriage.

The trial court awarded the balance in New Co. Investment, apparently a money market account, which the petitioner testified was "probably 700," to the petitioner as premarital property. There is nothing in the record to show the source of the funds in this account, and it should be considered to be part of the marital estate.

Based upon the record before us, except as to New Co. Investment account and the Rose Lane property, we find that the trial court's finding as to premarital property awarded to the petitioner was correct.

With respect to the respondent's premarital property, the three items of real estate listed on her exhibit 22 as premarital property were sold during the marriage and the proceeds used "to put into the family and take care of the kids and my expenses at the house."

With respect to the division of debt, the decree ordered the Rose Lane property sold and the proceeds distributed as follows:

(1) Deduction of costs of sale from proceeds;

(2) Deduction of existing first mortgage in the amount of $85,000.00 from proceeds;

(3) Deduction of second mortgage in approximate amount of $28,000.00 from proceeds;

(4) Deduction of pre-marital assets provided by Petitioner toward purchase of real estate, to-wit, $41,048.84, to be deducted from proceeds and reimbursed to Petitioner;

(5) Deduction of monthly mortgage payments currently in arrears from proceeds;

(6) Deduction of $28,000.00 to be paid to Petitioner representing reimbursement to Petitioner of second mortgage, the proceeds of which were used by Respondent for personal use relating to existing debts. If the $28,000.00 as set forth in this paragraph cannot be paid either fully or partially from said proceeds of sale, Respondent shall be and is personally liable for the payment of said obligation to Petitioner.

(7) Net proceeds thereafter to be divided equally

between Petitioner and Respondent.

The effect of this part of the decree was to make the respondent liable to the petitioner for any deficiency resulting from the sale of the property, in the event the proceeds were not sufficient to discharge the costs of sale and liens against the property.

Although the record establishes that the proceeds from the $28,000 second mortgage were used, at least in part, for the personal benefit of the respondent, in view of the property division which otherwise results in the petitioner's receiving the bulk of the property, we believe this part of the decree was unfair.

We modify the decree to provide that in the event the proceeds from the sale of the Rose Lane property are sufficient to pay the costs of sale, all liens against the property, and the credit of $25,133.72 due the petitioner, the balance shall be divided evenly between the parties. But in the event the proceeds from the sale of the property are insufficient to pay the costs of sale, the liens against the property, and the credit of $25,133.72 due the petitioner, any deficiency shall be paid by the petitioner.

The final assignment of error, relating to the denial of alimony, was not discussed in the respondent's brief. As a result, we do not consider the issue, pursuant to Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). Consideration of a case is limited to errors assigned and *discussed*. See, *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986).

The decree, as modified, is affirmed. The respondent is allowed the sum of $1,000 for the services of her attorney in this court. All costs are taxed to the petitioner.

AFFIRMED AS MODIFIED.