SHERYL K. WALKER, APPELLEE AND CROSS-APPELLANT,
v. RODNEY A. WALKER, APPELLANT AND CROSS-APPELLEE.
622 N.W. 2d 410

Filed January 9, 2001.   A-99-1272.

Jeffrey L. Hansen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellant.

Brenda L. Bartels, of Douglas, Kelly, Meade & Ostdiek, P.C., for appellee.

HANNON, SIEVERS, and MOORE, Judges.

SIEVERS, Judge.

After 30 years of marriage, Rodney A. Walker (Rod) and Sheryl K. Walker were divorced by the district court for Scotts Bluff County, Nebraska. Rod has appealed, and the principal issues are the valuation and distribution of Rod's share of a family farming corporation and the trial court's award of alimony. Sheryl has cross-appealed.

## FACTUAL BACKGROUND

Rod and Sheryl were married August 8, 1969, and their marriage produced three children who were all adults at the time of this divorce action. Sheryl, age 52 and in good health at the time of trial, graduated from high school and attended 1 year of secretarial school. Rod was 51 years old at the time of trial and held an associate's degree in agribusiness. Rod began farming with

his father, Arthur Walker, in 1973. Arthur had approximately 300 acres of farm ground which he transferred to Walker Farms, Inc., a corporation formed in late 1974. Arthur owned 2,051 shares of stock, and 217 shares were issued to each of Arthur's three sons who were working the farm, Rod, Stan, and Cliff. The youngest son, Greg, later joined the operation.

During the time the parties were married, Walker Farms, which included Walker Farms; Walker Brothers; Panhandle Pig Company, Inc.; and Blue Stem Pork, grew and diversified to the point that at the time of trial, it owned 1,248.88 acres, as well as large facilities for hog breeding, farrowing, and finishing. Over the years, Rod and his siblings have acquired additional shares of stock, and at the time of trial, Rod owned 612 shares of Walker Farms. Arthur is now deceased, and his four sons who work in the farming operation own a majority of the stock in Walker Farms. Rod did not pay for his original shares of stock or for those thereafter acquired.

Rod is paid $2,500 per month salary from Walker Farms and additionally receives a house to live in, a vehicle, utilities, meat, reimbursement for half of his telephone bill, and medical insurance. Rod receives additional income from his position as a director of Farm Credit Services, which amounted to $12,200 in 1998.

While the parties agree that Sheryl was never formally employed by Walker Farms and never owned stock, they have somewhat different versions of her contributions and involvement with Walker Farms. Rod asserts that Sheryl hated the farm and anything to do with it and that her contributions consisted of occasionally answering the telephone and running errands. Sheryl maintains that she worked as a "gofer" in the farming operation during the entire marriage, that she assisted all of the Walker brothers, and that they relied upon her. Sheryl testified that she ran for parts, assisted with banking, cooked, and maintained part of her family's home as the financial center of Walker Farms. However, she does not indicate in her testimony that she ever did fieldwork, that she was involved in the hog operation in any way, or that she was part of the decisionmaking processes of this large farming operation.

Sheryl was working as a secretary when the parties married, but soon quit and thereafter only worked outside the home spo-

radically for a few months in 1981, 1982, 1983, 1990, 1991, and 1992 at minimum wage part-time jobs.

Rod introduced testimony from Darrell Eskam, a certified public accountant, who opined that Walker Farms had a net equity value of $1,219,000 and that Rod's 21.77-percent interest in Walker Farms equaled $146,684.52 as of December 31, 1998. Eskam utilized a 35-percent discount for lack of marketability because Rod cannot convert the stock into cash and a 15-percent discount for lack of control because Rod does not have exclusive control of Walker Farms to arrive at the above figure for Rod's interest.

## TRIAL COURT DECISION

The trial court awarded each party the personal property in his or her possession, his or her separate bank accounts, certain insurance policies, and retirement accounts. Rod was awarded all of his stock in Walker Farms, together with any interest in Panhandle Pig Company; Walker Brothers, a partnership with his three brothers; and Blue Stem Pork, a partnership. He was to pay all debts related to those entities and hold Sheryl harmless thereupon. To equalize the property division, Rod was ordered to pay Sheryl the sum of $60,000, which was to draw interest at the rate of 6.285 percent from the date of judgment until paid. Additionally, Rod was to pay alimony at the rate of $500 per month for 60 months beginning November 1, 1999.

The trial court's division of property was detailed in an attachment to the decree which we re-create here for convenience.

| Property Description | Sheryl | Rod |
|---|---|---|
| 1997 Buick Park Avenue | $ 18,500.00 | |
| Household goods | 3,000.00 | $ 3,000.00 |
| Baler | | xx |
| Cash | 7,500.00 | 7,800.00 |
| Putnam Account | 25,790.00 | |
| Farm Bureau Annuity | 9,464.14 | |
| Farm Bureau Annuity | 19,868.23 | |
| Ohio National Policy | | 16,671.58 |
| Panhandle Pig Company | | 13,550.48 |
| Blue Stem Pork | | xx |

| | | |
|---|---|---|
| Walker Brothers Partnership | | 443.00 |
| Walker Farms, Inc. | | 168,190.43 |
| Tax refunds | 2,595.00 | |
| Money judgment | 60,000.00 | (60,000.00) |
| Total Value - Property received | $146,717.37 | $149,655.49 |
| Percentage received | 49.5 | 50.5 |

The trial court determined that Rod's Walker Farms stock was a marital asset and set the value of Rod's 21.77-percent interest in Walker Farms at $168,190.43. Because there are assignments of error relating to that valuation, we will discuss the court's method of valuation later in our opinion.

Rod perfected this timely appeal, and Sheryl cross-appeals the trial court's failure to award any attorney fees to her.

## ASSIGNMENTS OF ERROR

Restated, Rod's assignments of error are as follows: The district court erred in (1) holding that Rod's stock in Walker Farms was a marital asset; (2) alternatively, including the entire value of the Walker Farms stock in the marital estate, rather than including merely the increase in the value of the stock which occurred during the course of the marriage, plus failing to require Sheryl to prove the value of her contributions to Walker Farms and using the decision in *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), as a basis for the cash award to Sheryl; (3) including in the property division $60,000 worth of improvements to a house when such value was already included in the real estate valuation; (4) allowing Sheryl to testify about the value of improvements on land which she did not own and for which she had no foundation; (5) calculating the value of the Walker Farms stock by not applying the discount rate used by Rod's expert witness; and (6) awarding excessive alimony.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial court with respect to the court's determinations regarding division of property, payment of alimony, and attorney fees. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

## ANALYSIS

*Is Walker Farms Marital Property?*

    Out of the 2,856.5 shares of Walker Farms stock, Rod is the owner of 612 shares or a 21.77-percent interest. His three younger brothers with whom he farms, Cliff, Stan, and Greg, each own a like amount of Walker Farms stock. Rod's three sisters and his mother own the remaining 369.5 shares. The trial court included the Walker Farms stock, at a valuation of $168,190.43 in the marital estate, awarded it to Rod, and ordered Rod to pay Sheryl $60,000 to make the property division 49.5 percent for her and 50.5 percent for Rod. Rod advances a number of arguments about this result under the above assignments of error. The first is that the Walker Farms stock should have been excluded from the marital estate as gifted property given that Sheryl did not contribute to the improvement or operation of the farming operation during the marriage. The well-known rule from *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 733, 325 N.W.2d 832, 834 (1982), is as follows:

> [P]roperty acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. . . . An exception to the rule is where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.

In short, the marital estate generally does not include property acquired by one of the parties through gift or inheritance. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). The primary exception is when both spouses have contributed to the improvement or operation of the property which one of them received by gift. *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997). In *Tyler*, the wife brought a home from a prior marriage into the marriage. The husband and the wife lived in the wife's house, sold it, and purchased another, and then another, and

finally a fourth home which became the focus of the appeal. While this court in *Tyler* modified the divorce decree to require the wife to pay the husband half of the equity in the final home owned by the parties, the Supreme Court reversed. The *Tyler* court said that each time the *Van Newkirk* exception had been applied, "this court has required evidence of the value of the contributions and evidence that the contributions were significant." 253 Neb. at 213, 570 N.W.2d at 320. The court in *Tyler* then recited an extensive list of things which the evidence suggested the husband did to the home to improve it, such as building a deck, carpeting and painting the family room, replacing kitchen counter tops, and installing four ceiling fans. However, the *Tyler* court observed that the husband failed to produce any evidence indicating the value of these contributions and that he failed to demonstrate "the significance of the aforementioned contributions." *Id.* at 214, 570 N.W.2d at 320. In the present case, the evidence shows that Sheryl did not do fieldwork, did not assist with the hog operation, did not participate in the decisionmaking, and was unaware of what the brothers were doing in terms of building the hog operation, and that her contributions to the farming operation were merely occasional and incidental. She occasionally went for supplies and made bank deposits while she was in town. She was not authorized on the Walker Farms accounts. Rod testified that Sheryl wanted nothing to do with the operation, and Sheryl did not dispute his testimony admitting that their arrangement was that he would farm and that she would care for the children and the household. There was no evidence of the monetary value of her contributions to Walker Farms.

Rod would have us contrast Sheryl's noninvolvement with the evidence of involvement in *Applegate v. Applegate*, 219 Neb. 532, 365 N.W.2d 394 (1985), where the wife contended that she had made substantial contributions to nonmarital property and that as a result, such property should have been included in the marital estate. The *Applegate* court said:

> Vera's contributions to the operation of the property were typical of a wife of a farmer-cattle raiser. Occasionally, she would help Robert with branding, dehorning, calving, sorting out, feeding, weed burning,

irrigation, fencing, putting up hay, and resetting irrigation pipe. Her efforts, though not to be minimized, did not contribute directly to any preservation of or increase in value of the property.

*Id.* at 536, 365 N.W.2d at 397.

Therefore, the *Applegate* court excluded from the marital estate the property which had been gifted to the husband. Rod argues that if the gifted property remained outside the marital estate in *Applegate,* then surely his Walker Farms stock should be similarly treated, because the wife in *Applegate* was obviously much more involved in the operation of the gifted property than was Sheryl. We do not disagree.

The largely undisputed evidence shows that Sheryl's contributions to the operation of Walker Farms were sporadic, incidental, and insubstantial. Much more in the way of direct contribution to the operation of Walker Farms by Sheryl is required before she can avail herself of the exception to the *Van Newkirk* rule. This is not to denigrate her contributions to the family or the marriage, but, rather, to maintain focus on what work and assistance she provided directly to the farming operation. Thus, we agree with Rod that the Walker Farms stock was wrongly included in the marital estate by the trial court.

*Impact of* Grace v. Grace.

Rod also argues that the trial court erred in applying *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), while launching a frontal assault on that decision. While the trial court's oral explanation of its decision mentioned *Grace,* the fact is that the written calculations adopted as part of the court's decree plainly included the Walker Farms stock in the marital estate, rather than relying on *Grace. Grace* involves a cash award to a wife when gifted family farm and ranch corporation stock was excluded from the marital estate. Thus, at least part of the answer to Rod's argument is that the trial court really did not apply *Grace.* However, we discuss *Grace* in further detail, because we find that it is applicable here. But, at this initial juncture, it is appropriate to recall that the division of marital property is based on equitable principles, and the ultimate test for determining the appropriateness of a division of property is

reasonableness as determined by the facts of each case. *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999).

■ Returning to *Grace, supra,* Rod's brief argues that it is inconsistent to have a rule for gifted or inherited property as set forth in *Van Newkirk* and then a "nonsensical rule" from *Grace*, the result of which is to leave cases involving nonmarital property in a "state of limbo." Brief for appellant at 21. In *Grace*, the husband worked for a ranch corporation owned by his family. He owned 18.14 percent of the stock of the corporation, and his shares at the time of trial were valued at approximately $1.5 million. Part of the shares he owned prior to the marriage and part he acquired after the marriage through inheritance or gift. During the 16-year marriage, the corporation provided the parties with a home, vehicles, gasoline, and meat, as well as a monthly salary of $1,500. Consequently, the parties acquired a minimal marital estate. In *Grace*, the Supreme Court applied the rule from *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), and concluded that the wife had not contributed to the improvement or operation of the corporation so as to justify the inclusion of the husband's stock in the marital estate. Thus, the *Van Newkirk* exception was found inapplicable. Nonetheless, the *Grace* court stated: "There are other considerations, however, beyond the exception set out in *Van Newkirk v. Van Newkirk, supra.* The *Van Newkirk* rule itself does not purport to be an ironclad, rigid rule for all circumstances." *Grace*, 221 Neb. at 699, 380 N.W.2d at 284. The *Grace* court then quoted *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980): " 'How property, inherited by a party before or during the marriage, will be considered in determining division of property or award of alimony must depend upon the facts of the particular case and the equities involved.' " *Grace*, 221 Neb. at 700, 380 N.W.2d at 284.

The court concluded that the stock should be considered in determining a division of property and awarded the wife the sum of $100,000 as division property under the particular facts of *Grace*. How the sum of $100,000 was determined was not explained, which Rod argues contributes unnecessarily to the uncertainty facing divorcing farm or ranch couples who often

trace their start in agriculture to a gift or inheritance from the husband's family.

The court in *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), rationalized its award, payable over 10 years, by pointing out that Grace Land & Cattle Corporation was totally an effort headed by the husband's father and mother and shared in by all of their children, all of whom actively worked each day in the furtherance of the corporation's business and that to inject the divorced wife, an outsider, as a stockholder would be unfair to the husband as well as the other stockholder members of his family. Additionally, the court recognized that the husband and the wife had been married for 16 years, but had not acquired a house or a car or property that such a couple "with above average assets, would be expected to acquire." *Id.* at 701, 380 N.W.2d at 285. Finally, as apparent justification for awarding the wife only 6.7 percent of the stock's value, the court found that the valuation of $1.5 million in a closely held strictly family corporation was unreasonably high because the husband really only owned "an expectancy interest in a large farming and ranching operation." *Id.*

While the value of Grace Land & Cattle Corporation at $6.8 million to $9.1 million may not be typical, family farming and ranching corporations as described in *Grace* and found in the instant case are relatively common occurrences in this state. Consequently, the decision in *Grace* has generated considerable discussion about what might be called "*Grace* awards" as a device to fairly and reasonably divide marital estates where the prime asset in contention is one spouse's gifted or inherited stock or property in a family agriculture organization.

The evidence clearly reveals that over the course of this 30-year marriage, the efforts of Rod, in conjunction and cooperation with his father and three brothers, were directed toward enhancing the value of Walker Farms and that all of Rod's stock therein was gifted. Sheryl's efforts were directed toward running the family household. As earlier said, the Walker Farms stock owned by Rod does not belong in the marital estate, but a *Grace* award is appropriate under the circumstances and equities of this case. The amount of that award must be decided.

In *Grace*, the husband's 18.14-percent interest in the corporation was valued at the time of trial at $1.5 million, generating a $100,000 award to the wife payable over 10 years. On a percentage basis, this is 6.7 percent. While *Grace* has been cited 14 times in published decisions of the Nebraska appellate courts, there is not another true "*Grace* award" in the published decisions. Nonetheless, for context, we review some of those cases. The closest case is *Dormann v. Dormann*, 8 Neb. App. 1049, 1056, 606 N.W.2d 837, 844 (2000), where we said that the husband and the wife did not "acquire a house, a car, or other property that a couple married 21 years would be expected to acquire." We decided that those facts would be considered in reaching a just and equitable award and that the district court did not abuse its discretion in including 35 shares of Dormann Ranch, Inc., in the marital estate. The record in *Dormann* showed that at the date of the marriage, the husband owned 81 shares of stock and that during the marriage, he acquired an additional 35 shares, although we found the record was not clear as to whether these shares were gifted to him or transferred as part of his employment benefits. Thus, in *Dormann*, there was not a *Grace* award by way of cash to the wife, but, rather, the factual similarity to *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), was used to find that there was no abuse of discretion by the trial court when it included the 35 shares of stock acquired during the marriage in the marital estate.

In *Gerard-Ley v. Ley*, 5 Neb. App. 229, 558 N.W.2d 63 (1996), the husband inherited bank stock which he sold for $1.75 million, and he ultimately paid off the debt on the family home known as the Campbell property. This court used *Grace, supra*, in its discussion to conclude that as in *Grace*, this couple did not acquire significant assets other than the Campbell property, and "that factor, along with the other equities of the case, requires that [the wife] receive an interest in the home." *Gerard-Ley*, 5 Neb. App. at 237, 558 N.W.2d at 68. The Campbell property was titled in joint tenancy. We found that the husband had not rebutted the presumption that when a husband and wife take title to property as joint tenants, even though one pays all of the consideration, a gift is presumed to be made by the spouse fur-

nishing the consideration to the other. Thus, while *Gerard-Ley* discusses *Grace*, there was not really a *Grace* award.

In *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992), the court cited *Grace, supra*, merely as support for the rule of setting off to the husband an inheritance which can be identified and thereby eliminated from the marital estate to be divided. While *Grace* is cited in *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988), the case actually involves application of the *Van Newkirk* rule with respect to the inheritance by the husband of corporate stock which was set off to him as being outside of the marital estate. In *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988), the *Van Newkirk* rule was cited, as was the caveat thereto from *Grace, supra*, that the source of funds brought into a marriage is a consideration, but not the final determining factor on division. In *Frost*, there was not, however, a family corporation or a *Grace* award.

Our examination of the remaining published cases in which *Grace, supra*, is cited reveal that *Grace* is actually most often cited for a standard of review concerning child custody, e.g., *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990), than for any other proposition. *Grace, supra*, is also used to articulate the *Van Newkirk* rule and exception, but there really is only one *Grace* award in the reported decisions of the appellate courts and that is in *Grace* itself, although *Dormann, supra*, is close. Thus, beyond what can be learned from the facts of *Grace, supra*, and the generalized language about the division of property depending upon "the facts of the particular case and the equities involved," our research provides little guidance as to how a court, once it determines that a *Grace* award is appropriate, figures the amount and terms of that award. However, the lack of a "formula" should not prevent an equitable division of property, because ultimately each case is decided on its own facts, circumstances, and equities, with the ultimate goal being to achieve reasonableness.

*Determining Sheryl's* Grace *Award.*

In determining that reasonable division, we must first look to how the trial judge valued Walker Farms, and for that purpose,

we set forth the trial court's valuation of Walker Farms as it appeared in an attachment to the decree:

| | |
|---|---|
| Total assets | $2,330,219.00 |
| Plus additional value for improvements on Randall Farm | 60,000.00 |
| Less current value of real estate conveyed by Arthur to corporation | |
| 150.71 × $1,100 | |
| 75.3 × $1,200 | |
| 160.0 × $1,300 | |
| 3 × $ 600 | $ 465,941.00 |
| Marital estate total assets | $1,924,278.00 |
| Current liabilities | $1,110,686.00 |
| Less share of debt apportioned to nonmarital value | |
| $ 465,941 × $1,110,686 | |
| 2,390,219 | ($ 216,513.27) |
| Marital estate net liabilities | $ 894,172.73 |
| Marital estate equity | $1,030,105.27 |
| Rod's share of corporation stock (21.77%) | $ 224,253.91 |
| Discount for minority ownership interest | 25% |
| Net value of corporate stock treated as marital asset | $ 168,190.43 |

In the "Walker Farms, Inc. - Valuation" reproduced above and adopted as part of the district court's decree, there is a category designated as total assets in the amount of $2,330,219 and added to that as a separate item is $60,000, which the trial judge describes as "[p]lus additional value for improvements on Randall Farm ([p]etitioner's [t]estimony)." Rod contends that the addition of this $60,000 to the asset base is error, because all of the testimony, including that of Sheryl's certified public accountant, was that the valuations for all of the land included improvements thereupon. The underlying evidence about this $60,000 is that the Randall Farm is where Rod and Sheryl's family home was located. The Randall Farm is owned by Walker Farms, and such ownership includes, according to the evidence, all improvements thereupon. This situation with respect to Rod and Sheryl's family home was the same as the

other three brothers. Each brother lived on a tract of farm ground owned by the family corporation in a house owned and provided by the family corporation. The trial judge may have focused upon Sheryl's testimony that at one point, the four brothers had discussed the notion of breaking out their homes from the family corporation and owning them individually. Her testimony was that this did not occur, but that the value for their home had they done it would have been "around $60,000 or somewhere in there." But, there is no evidence that this $60,000 exists independently of the assets of Walker Farms, or independently of the Randall Farm. Thus, finding error in the addition of the $60,000 for the "improvements" located on the Randall Farm which is owned by Walker Farms, we back that figure out of the Walker Farms valuation and work with the "total assets" figure of $2,330,219 used by the trial court and which no one contests in this appeal.

*Original Land Gifted by Arthur.*
■ The trial court also subtracted $465,941 representing the "current value of real estate conveyed by Art Walker to the corp[oration]" from the total assets. The trial court also reduced the liabilities of Walker Farms by the amount of the current debt which could be apportioned to the real estate conveyed to Walker Farms by Arthur. Obviously, this calculation has a substantial impact on the value of Rod's Walker Farms stock. While neither party complains about this calculation, we believe that it constitutes plain error, which we must correct before attempting to arrive at an appropriate "*Grace* award." Plain error is uncomplained of error of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Phelps v. Phelps*, 239 Neb. 618, 477 N.W.2d 552 (1991). We quote the trial judge's oral comments from the bench at the end of this trial:

> [T]he real estate that originally was conveyed by Art Walker, which would appear then on the top of Exhibit 12, to the family corporation should be set aside, deducted or deleted from the corporate assets in arriving at a value to use. . . . And if I set aside then the real estate that came from Art Walker, then I proportionately have to attribute a

portion of the total corporate debt to that asset and make an adjustment accordingly.

Walker Farms is a farming operation owning 745.42 acres of land, all of which must be considered in determining the value of the corporation—which in turn determines the value of Rod's corresponding ownership of 21.77 percent of the stock of that corporation. Backing nearly one half of the land out of the corporation's asset base produces a result which is fundamentally wrong and unfair. The trial court was apparently attempting to arrive at a "marital value" or "marital estate" of Walker Farms and for that purpose removed from consideration the land originally conveyed by Arthur, as well as the portion of the debt attributable thereto. While that approach may well have validity to determine the appreciation of Walker Farms during the marriage in order to contrast that appreciation with the value of the assets which Arthur put into the corporation at the outset, the only possible reason for such exercise is if Rod's Walker Farms stock was part of the marital estate. But because the stock in Walker Farms is not a marital asset, this calculation is wrong and produces a false and reduced valuation of Rod's interest in Walker Farms, a matter which must be accurately determined in order to make the appropriate award under the equities of this case pursuant to *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986).

Therefore, using the district court's findings concerning the assets and liabilities which are essentially unchallenged except for the $60,000 which we have dealt with above, but rejecting its methodology, we value Rod's interest in Walker Farms at $265,492. (Assets of $2,330,219 minus liabilities of $1,110,686 equals a net value for the corporation of $1,219,533, and Rod's 21.77-percent share thereof equals $265,492.)

Additionally, the Walkers have a marital estate of nearly $130,000, and thus this case and *Grace* have a factual disconnection to some extent, because substantial assets have been accumulated in the marital estate, which was not true in *Grace*. However, this is a considerably longer marriage than the Graces' marriage. It is clear that Rod's labors during the marriage were plowed back into Walker Farms to his benefit and that of his brothers, while Sheryl maintained the household and took primary responsibility for the children. While *Grace* gives a 6.7-

percent award of the husband's nonmarital interest in the family corporation payable over 10 years, we think using that percentage in this case would not be equitable given the length of the marriage and the fact that Rod's nonmarital estate is substantially greater than the marital estate, regardless of whether a discount is applied or not. However, for purposes of the *Grace* award here, we do not apply the 25-percent discount applied by the trial judge. Instead, we follow the teachings of *Grace* that minority ownership interest and lack of control is simply a consideration. We have considered the evidence from the certified public accountants that a discount is appropriate in valuation, but on the other hand, the evidence is clear that the four Walker brothers are committed to the continuation of the business and that control is not a problem as they manage by agreement. In short, Walker Farms is a viable business run by knowledgeable people who are family, and there is no evidence that the operation will not continue. Thus, when considering the matter of a *Grace* award, we value Rod's nonmarital estate at $265,492.

We find that the $60,000 which the trial court awarded as equalization of the marital estate is also an appropriate figure for a *Grace* award. It represents slightly less than a fourth of the value of Rod's nonmarital estate, and we find that it is an appropriate figure given the circumstances and equities revealed by the record. Because Rod's nonmarital estate was accumulated over a lengthy period of time, we believe it appropriate that the payment to Sheryl also be over a period of time. Moreover, we take note of the evidence that Walker Farms lost $400,000 in 1998, the year before trial, and the evidence was for a projected loss of the same magnitude in the year of the trial, 1999. The banker for Walker Farms described the corporation as under "financial duress" due to a serious downturn in the hog market where the cost of production per animal at the time of trial exceeded the return in the marketplace by $7 per hundred weight. The timeframe for payment was 10 years in *Grace, supra,* but we believe that is too long in the instant case, given the ages of the parties, the length of the marriage, and Sheryl's need to rebuild her life. Accordingly, we modify the trial court's decree to order that Rod shall pay Sheryl $60,000 total, payable at the rate of $20,000 per year for 3 years, said amounts to bear

interest at the rate for judgments as of the date of our mandate from and after our mandate. The first installment shall be due 30 days after the issuance of our mandate herein, and the succeeding payments shall be due on the first and second anniversary of our mandate. Rod may prepay all or part of such $60,000.

*Applicability of* Tyler v. Tyler.

Rod argues that the trial court did not properly apply *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997), which arguably would require Sheryl to prove the value of her contributions to Walker Farms in order to take Walker Farms out of the *Van Newkirk* rule. We have serious reservations about the applicability of *Tyler* in a divorce in a farm or ranch situation, remembering that it was decided in the context of physical improvements to a house, a markedly different situation. It seems unrealistic and nearly impossible to apply the holding of *Tyler* so as to require precise proof of the monetary value of what a farm or ranch spouse has done over the years to contribute to the success of a farm or ranch. But, given our finding that Walker Farms is nonmarital property, we end our discussion of *Tyler* with this comment.

Additionally, we note that Rod argues that only the increase in value of the gifted property is subject to being included in the marital estate, citing *Rezac v. Rezac*, 221 Neb. 516, 378 N.W.2d 196 (1985). However, having found that Walker Farms is excluded from the marital estate and that this matter is determined under *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), we need not address this argument advanced by Rod any further.

*Division of Property.*

After removing Walker Farms from the marital estate calculation, which in turn requires that we remove the money judgment of $60,000 payable by Rod to Sheryl from the marital estate, the result is a marital estate which is divided approximately 71 percent to Sheryl and 29 percent to Rod. This division is outside of the boundaries typically used, and we note that the accumulation of the marital estate is largely due to the efforts of Rod. The Nebraska Supreme Court has said that generally a

division of one-third to one-half of the marital estate is appropriate and that property divisions are not subject to any rigid mathematical formula. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). *Reichert* also cites the considerations for property division, including the circumstances of the parties, the duration of the marriage, the history of contributions to the marriage, including care and education of children, and the ability of the supported party to engage in gainful employment. Sheryl will be able to engage in gainful employment, as she has no health problems and no minor children. This was a long-term marriage, but the contributions to the economic success thereof have largely been Rod's, and we cannot ignore the fact that those contributions have flowed from the initial gifting of land and machinery by Arthur to a family corporation and then the cooperative effort by Rod and his brothers to expand and improve upon that initial organization. Thus, we believe a property division which is closer to the traditional one-third to one-half is appropriate. We adjust the property division by awarding the Farm Bureau annuity, with a value at the time of trial of $19,868.23, to Rod. After making that adjustment and including the *"Grace* award," the property division is as follows, listing the marital estate first and then the nonmarital estate.

| Property Description | Sheryl | Rod |
|---|---|---|
| 1997 Buick Park Avenue | $ 18,500.00 | |
| Household goods | 3,000.00 | $ 3,000.00 |
| Baler | | xx |
| Cash | 7,500.00 | 7,800.00 |
| Putnam Account | 25,790.00 | |
| Farm Bureau Annuity | 9,464.14 | |
| Farm Bureau Annuity | | 19,868.23 |
| Ohio National Policy | | 16,671.58 |
| Panhandle Pig Company | | 13,550.48 |
| Blue Stem Pork | | xx |
| Walker Brothers Partnership | | 443.00 |
| Tax refunds | 2,595.00 | |
| Total Value - Property received | $ 66,849.14 | $ 61,333.29 |
| Percentage of marital estate received | 52.15 | 47.85 |

<u>Nonmarital Estate</u>

| | | |
|---|---|---|
| Sheryl's "*Grace* award" | 60,000.00 | $ (60,000.00) |
| Walker Farms, Inc. | | 265,492.33 |
| TOTAL | $126,849.14 | $266,825.62 |

Guided by the principle of reasonableness, we find that the above division of property accumulated in the marital estate, as well as the treatment of the nonmarital estate through the vehicle of a *Grace* award, is fair and reasonable to both parties.

*Alimony.*

Rod contends that the trial judge erred in awarding alimony to Sheryl in the amount of $500 per month for 60 months. Rod's argument is essentially that given the amount of property awarded to Sheryl, she does not have a need for alimony nor does he have the ability to pay such alimony.

In considering the facts pertinent to the alimony question, we recall that Sheryl has a high school education, five quarters of secretarial education, which is now over 30 years in the past, a very small amount of minimum wage part-time employment, and no particularized skills. While there is vague testimony that she had some desire to study interior design during the course of the marriage, she never discussed it with Rod. We find that there is no evidence of deprivation through the marriage of either educational opportunities or a career for Sheryl.

In Rod's case, his employment by Walker Farms pays him $2,500 per month plus a home, a vehicle, meat, and insurance. His economic situation from those benefits alone is considerably better than Sheryl's, to say nothing of the potential earnings and asset base which derive from his ownership interest in Walker Farms. In determining alimony, as well as property division, the court should consider four factors: (1) the circumstances of the parties; (2) the duration of the marriage; (3) the history of contributions to the marriage, including contributions to the care and education of the children and interruption of personal careers or educational opportunities; and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party, the polestar being fairness and reasonable-

ness and determined by the facts of each case. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

Neb. Rev. Stat. § 42-365 (Reissue 1998) provides specific statutory criteria for consideration in an alimony award, and the Supreme Court has said that in addition to such criteria, the court should consider the income and earning capacity of each party as well as the general equities of each situation. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

Because we believe that an alimony award in this case is so clearly appropriate and the amount is patently reasonable, we spend little further effort on this issue. This marriage lasted over 30 years, Rod's work was directed to the enhancement of a family corporation, and his earning capacity, including the "perks" he receives via the corporation, approximate $40,000 per year. On the other hand, Sheryl has little meaningful work history, has virtually no education beyond high school, and is now in her early fifties. Her earning capacity is probably minimum wage, as she said in her testimony. This would mean an earning capacity of less than $15,000 per year. Under these circumstances, an alimony award of $500 per month for 5 years is hardly unreasonable. Rod's assignment of error is meritless.

*Cross-Appeal for Attorney Fees.*

Sheryl's cross-appeal contends that she should have received an award of all or at least a portion of her attorney fees and costs. The evidence shows $6,315 in attorney fees, deposition costs of $542, and a billing from the certified public accountant who testified in her behalf in the amount of $1,200 for a total for fees and costs of $8,057. The awarding of attorney fees in marriage dissolution cases is a matter initially entrusted to the discretion of the trial judge and, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion. *Hamm v. Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988). An abuse of discretion is defined as the trial court's ruling being clearly untenable and unfairly depriving the litigant of a substantial right and a just result. *Burke v. Harman*, 6 Neb. App. 309, 574 N.W.2d 156 (1998).

In considering this issue, we operate from the premise that Rod will leave the marriage with a share of the marital estate

plus his stock in Walker Farms, which has considerable value, fully intact. Additionally, he has economic resources in terms of earning power and assets which Sheryl does not. The trial in this case, when we view the evidentiary presentation, was expeditious and efficient. The fees charged by Sheryl's counsel are reasonable, given the magnitude and complexity of the case. Thus, given these circumstances, it was an abuse of discretion not to have ordered Rod to pay some of Sheryl's fees. At the simplest level, he can afford to pay, and she needs the help. Therefore, we order that Rod pay the sum of $4,000 toward Sheryl's attorney fees to be taxed as cost.

## CONCLUSION

The district court erred in including Walker Farms as part of the marital estate, and we have applied *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), in order to accomplish an equitable result in a family farming corporation situation. In that process, we have awarded one of the Farm Bureau annuities to Rod as previously outlined. The $60,000 "*Grace* award" which we have ordered may be paid in three equal installments as set forth in our opinion. We have also ordered that Rod pay $4,000 toward Sheryl's legal expense. In all other respects, the result of the trial court is affirmed.

AFFIRMED AS MODIFIED.