751 N.W.2d 645 (2008)
16 Neb. App. 724
Karen D. CHARRON, appellee and cross-appellant,
v.
Charles J. CHARRON, appellant and cross-appellee.
No. A-07-338.
Court of Appeals of Nebraska.
June 3, 2008.
*647 Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., Kearney, for appellant.
John O. Sennett and Julianna S. Jenkins, of Sennett, Duncan, Borders & Jenkins, P.C., L.L.O., for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
SIEVERS, Judge.
Karen D. Charron and Charles J. Charron (Joe) were married on February 20, 1988, and the district court for Buffalo County, Nebraska, dissolved their marriage by a decree of dissolution on March 14, 2006. Neither party is completely satisfied with the trial court's decree, as Joe has appealed and Karen has cross-appealed.

FACTUAL BACKGROUND
Karen and Joe were married when she was 18 years old and he was 22. High school is the extent of the education of both parties. During the marriage, four children were born, and the primary responsibility for raising the children was Karen's. The children and their ages at the time of trial were Sara, age 18; Kristie, age 15; Nolan, age 10; and Dustin, age 6. Karen was responsible for doing the household work, paying the household bills, and occasionally running errands or helping out during branding for the Arrow C Ranch, Inc. She had not been employed during the marriage, other than some part-time cleaning work, but was employed at the time of trial.
Joe has always worked for his family's corporation, Arrow C Ranch (hereinafter the corporation). At the time of the trial, Joe's salary was $1,000 per month. Joe testified that he worked 7 days a week from dawn to dusk and took about 20 days a year off. In addition to Joe's salary, the corporation provided the Charron family's housing, vehicle fuel, utilities, beef, and bulls to service their cow herd. In addition, Joe used the corporation's equipment to farm their land, as well as using the corporation's pasture ground to graze their cattle. Karen and Joe's personal assets included investments of approximately $182,700 plus 138.75 acres of mixed crop and pasture ground worth $130,000. Depending upon whose numbers were used, Karen and Joe had a cow herd of 98 or 81 head. Joe had been given 25 percent of the capital stock of the corporation by his parents, which stock the trial court valued at approximately $1 million.

DECREE OF DISSOLUTION
Joe was awarded custody of the eldest child, Sara, and Karen was awarded custody of the three other children. The trial court noted that Karen was employed on a part-time basis earning $8 per hour and attributed such hourly wage to her on a full-time basis for purposes of the child support calculation. The trial court ordered Joe to pay child support in the amount of $1,171.50 per month, along with 75 percent of unreimbursed medical expenses. The trial court found that the amount of the parties' marital estate was approximately $503,000. Joe was awarded $251,767 of such estate, plus his corporate stock, and Karen was awarded $251,335 of the marital estate. Included in such award to Karen were approximately 138 acres located in "NE ¼ 14-12N-13 West, West of the 6th PM, Buffalo County, Nebraska."
In addition to division of the marital property, Karen sought a "Grace award," *648 due to the substantial ownership interest that Joe had in the his family's corporation and the fact that during the marriage, his work efforts were devoted to the betterment of the corporation. See Grace v. Grace, 221 Neb. 695, 380 N.W.2d 280 (1986). The trial court, after reciting the substantial benefits the Charron family received from the corporation other than Joe's somewhat nominal salary, as well as the fact that the parties had a substantial marital estate, found that the case was not appropriate for a Grace award to Karen. Karen was awarded alimony of $1,200 per month for 84 consecutive months, to terminate upon Karen's death or remarriage. Other findings and orders in the decree are not pertinent to this appeal.

ASSIGNMENTS OF ERROR
Joe assigns error to the court's award of the 138 acres owned by the parties to Karen, error in the amount of child support which he was ordered to pay, and error in the trial court's failure to award him credit for a certificate of deposit that he owned prior to the parties' marriage. In her cross-appeal, Karen complains of the failure of the trial court to give her a Grace award.

STANDARD OF REVIEW
In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Bauerle v. Bauerle, 263 Neb. 881, 644 N.W.2d 128 (2002). This standard of review applies with respect to the trial court's determination regarding division of property and alimony. See id.

ANALYSIS

Award of 138 Acres to Karen.
Joe argues that he should have received the 138 acres owned by the parties. This piece of ground is composed of 58 acres of farm ground, with the balance being a building site and a pasture. Of the farm ground, approximately 45 acres are devoted to row crops and 13 acres to hay. Joe farmed this ground during the marriage under a lease agreement before it was acquired by the parties approximately 2 years before the parties separated. Joe used the land to pasture the parties' cattle herd, and he contended that it was an "integral part" of his farming operation and that he needed it to generate income to support the family. Joe also argues that the only use Karen would make of the land would be to pasture her eight horses and that there are sufficient liquid assets to award her the cash equivalent of this parcel of land.
In response, Karen asserts that the parties had only owned the ground for 2 years before their separation and that it was acquired through a series of transactions involving her family. Karen does not dispute that Joe could farm the ground, but strongly disputes that it is an "integral part" of his farming operation, given that the corporation owns approximately 5,000 acres, of which it farms 130 acres of row crops and 300 to 400 acres of hay ground. Karen asserts that she would pasture her eight horses and five cows on the ground and raise hay and crops to feed her livestock. Finally, Karen asserts that she would build a home on the acreage, and we note that the family did not have their own home, because housing was provided by the corporation.
Under Neb.Rev.Stat. § 42-365 (Reissue 2004), the purpose of property division is to equitably distribute the marital assets between the parties, and the polestar for such distribution is fairness and reasonableness as determined by the facts of each case. See Gress v. Gress, 271 Neb. 122, 710 N.W.2d 318 (2006). Although *649 the trial court's decree of dissolution does not specifically address why Karen rather than Joe was assigned such property, the question for us after our de novo review is simply whether such award was an abuse of discretion. The difficulty is that each party not only wants the land, but has a viable and we 11-articulated reason behind such desire. Obviously, the trial court found it reasonable and equitable to award the land to Karen. From our review of the record, and recalling Joe's involvement with the corporation, it seems that it may well be a stretch to conclude that the ground in question is an "integral part" of Joe's farming and ranching operation, as he asserts. Both parties have appropriate uses for the ground, and we cannot say that the trial court abused its discretion or that its treatment of this parcel was unreasonable or unfair.

Child Support.
The trial court's decree orders Joe to pay $1,171.50 per month in support until the parties' oldest child is emancipated. This figure fails to take into account Karen's obligation under the worksheet adopted by the trial court to be responsible for $128.25 per month in support. In short, there is an offset which the trial court appears to have forgotten in drawing up the decree. Karen does not dispute Joe's claim in this regard. We hereby modify Joe's child support obligation, retroactive to the time of the decree, to $1,043.25 per month for three children.

Joe's Premarital Certificate of Deposit.
Joe claims that the trial court should have set aside to him the sum of $27,072 from the marital assets because he brought a certificate of deposit (CD) worth that amount into the marriage. Joe testified that he went to his bank and had them print records going back to the time of his marriage and that such records indicated he then owned a CD in the amount stated above. Joe's testimony concerning what happened to the CD is as follows:
Q Now, did you and your wife ever cash that [CD] and spend it on household expenses or take a trip or anything like that or did it end up in other investments?
A I believe it probably made its way to the other investments.
Q And why do you believe that?
A Because I know we never cashed it for anything.
Q So why did you move it to other investments?
A For better investment reasons.
Q And so did you move those  that CD to the investments that are found on F2 through F6?
A Yes, I believe so.
Q And possibly F7?
A Yes.
We have tracked "F2" through "F7" down to exhibit 17, where there is a category thereupon designated as "F. LIFE INSURANCE, RETIREMENT PLANS & IRA's." Six of these items are the "investments" where the money from the CD ended up, according to Joe's quoted testimony. These six items include IRA's valued at approximately $70,000 and liquid assets, such as mutual funds, valued at approximately $95,000. The trial court found that the CD Joe had identified as item "K11," his premarital property, on exhibit 17 had not "adequately been traced into other now existing assets to establish a premarital credit."
The law is that if premarital property can be identified, it is typically set off to the spouse who brought the property into the marriage. Olson v. Olson, 13 Neb.App. 365, 693 N.W.2d 572 (2005). But when the actual premarital property no longer exists, then the question of whether there should be a setoff becomes more *650 problematic. The Supreme Court has noted inherent problems with tracing premarital property through disposition and reinvestment during the marriage. See Rezac v. Rezac, 221 Neb. 516, 378 N.W.2d 196 (1985) (noting that parties tend to suggest tracing only when there is improvement in value but noting it is not error to restrict credit to identical property which is retained during marriage or to value of property at time of marriage or when disposed of during marriage).
The tracing argued for in this case illustrates many, if not all, of the problems present in tracing premarital assets and emphasizes the need for rather comprehensive and exacting proof of what has happened to a party's premarital asset. Without producing any concrete evidence of the existence of the CD other than his say-so, Joe testifies in effect that "it's in those six investments somewhere." Suffice it to say that the proof in this case falls far short of that seen when a party to a dissolution action makes a successful tracing claim. The burden of proof is on Joe, but he did not show where the money went, that it stayed where it went, or that the investment(s) into which it went gained value rather than lost value. The trial court did not abuse its discretion in rejecting Joe's claim for the tracing of a CD which is alleged to have existed nearly 20 years prior to trial.

Karen's Cross-Appeal Seeking Grace Award.
Karen assigns error to the district court's failure to give her a "Grace award" which has become a common term of art in dissolution cases, particularly involving farms and ranches, and which derives from the Supreme Court's opinion in Grace v. Grace, 221 Neb. 695, 380 N.W.2d 280 (1986). We comprehensively discussed the concept of a Grace award and the application of Grace, supra, in our decision in Walker v. Walker, 9 Neb.App. 834, 622 N.W.2d 410 (2001). For the sake of judicial efficiency, we will not repeat that discussion and analysis here beyond our description of a Grace award "as a device to fairly and reasonably divide marital estates where the prime asset in contention is one spouse's gifted or inherited stock or property in a family agriculture organization" Id. at 843, 622 N.W.2d at 417. We also note the Supreme Court's decision in Medlock v. Medlock, 263 Neb. 666, 679, 642 N.W.2d 113, 125-26 (2002), in which the Supreme Court used the following description of its decision in Grace, supra: "[W]e ordered a cash award as compensation for the inadequacy of the marital estate."
The inadequacy of the marital estate in cases of this nature involve a typical factual pattern where the wife devotes herself to running the household and caring for the children and where the husband's labors are devoted to a family farming or ranching corporation in which he owns stock, usually owned prior to the marriage or gifted solely to him during the marriage. Hence, under our cases, the stock is treated as the husband's separate property. Additionally, in the typical situation where the issue arises, the husband receives a rather nominal cash salary in exchange for his labor devoted to his family's farm or ranch but also receives such things as housing, utilities, vehicles, fuel, beef, use of the corporation's land for his private livestock herd, et cetera. As a result of the low cash earnings of the husband, the couple often has an inconsequential marital estate. This typical factual backdrop helps explain the Supreme Court's reference in Medlock, supra, to a Grace award as compensation for the inadequacy of the marital estate. In the instant case, the trial court found significant factual differences between this case and Grace, supra; therefore, the trial court denied Karen's request for a Grace award.
*651 We review the trial court's decision in this respect de novo for an abuse of discretion. Given that the parties were married rather young and that Joe is only in his early 40's and Karen in her late 30's, it cannot be said that their marital estate that the trial court valued at $503,000a value undisputed in this appealis inadequate. The trial court evenly divided the marital estate and, in addition, awarded Karen 7 years' worth of alimony at the rate of $1,200 per month.
The overriding concern is whether the division is fair and reasonable, recognizing the substantial factual difference between the instant case and Grace, supra; Medlock, supra; and Walker, supra, because the parties here have a substantial marital estate. Therefore, the instant case is distinguishable from Grace, supra, as well as the cases we have mentioned that followed it and where a Grace award was made. Additionally, the division of the marital estate was equal and thus was clearly fair and reasonable. Hence, we cannot say that the trial court abused its discretion in declining to make a Grace award to Karen.

CONCLUSION
Finding no merit to the assignments of error raised by either Karen or Joe, we affirm the decision of the district court in all respects, except for the minor correction to Joe's child support obligation.
AFFIRMED.