In the Supreme Court of Georgia

Decided:  May 9, 2016

S16F0167.  HORTON v. HORTON.

HINES, Presiding Justice.

Pursuant to this Court's Rule 34 (4), Karen Horton ("Wife") was granted a discretionary appeal from the final judgment and decree of divorce, as amended,[1] ("Decree") ending her marriage to Christopher L. Horton ("Husband"). The appeal was granted in order to consider whether the superior court erred in determining as a matter of law that the house titled in Husband's name ("House") was his separate property, and whether it  erred in awarding Husband attorney fees under OCGA§ 9-15-14.[2]  For the reasons which follow,

---

[1] The amendment to the final judgment and decree of divorce was entered in order to address the parties' requests for attorney fees pursuant to OCGA §§ 19-6-2 and 9-15-14.

[2] OCGA § 9-15-14 provides:

(a) In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as

we affirm.

The parties were married on October 3, 2011, and separated approximately 19 months later, on May 8, 2013. There were no children of the marriage. The parties met through the use of a dating website for older adults; at the time of

is just.

(b) The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the Georgia Civil Practice Act. As used in this Code section, lacked substantial justification means substantially frivolous, substantially groundless, or substantially vexatious.

(c) No attorney or party shall be assessed attorney's fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia if such new theory of law is based on some recognized precedential or persuasive authority.

(d) Attorney's fees and expenses of litigation awarded under this Code section shall not exceed amounts which are reasonable and necessary for defending or asserting the rights of a party. Attorney's fees and expenses of litigation incurred in obtaining an order of court pursuant to this Code section may also be assessed by the court and included in its order.

(e) Attorney's fees and expenses under this Code section may be requested by motion at any time during the course of the action but not later than 45 days after the final disposition of the action.

(f) An award of reasonable and necessary attorney's fees or expenses of litigation under this Code section shall be determined by the court without a jury and shall be made by an order of court which shall constitute and be enforceable as a money judgment.

(g) Attorney's fees and expenses of litigation awarded under this Code section in a prior action between the same parties shall be treated as court costs with regard to the filing of any subsequent action.

(h) This Code section shall not apply to proceedings in magistrate courts. However, when a case is appealed from the magistrate court, the appellee may seek litigation expenses incurred below if the appeal lacks substantial justification.

their marriage, Wife was in her mid-fifties, Husband was in his mid-sixties, and each had been married before. On May 31, 2013, Wife filed for divorce, alleging cruel treatment and that the marriage was irretrievably broken; she sought, inter alia, an equitable division of assets and liabilities and attorney fees and expenses of litigation. On June 20, 2013, Husband filed an answer and counterclaim for divorce; he denied Wife's allegation of cruel treatment, agreed that the marriage was irretrievably broken, and sought an equitable division of assets and debts incurred during the marriage as well as attorney fees and expenses.

On August 18, 2014, the parties appeared for trial and stipulated: the marriage was irretrievably broken; Wife owned her home in Savannah prior to the marriage; Husband owned the House prior to the marriage; the mortgage balance on the House was $152,062.81; Wife would retain the benefits from her retirement plan, which she accumulated prior to the marriage; Husband would retain a $985 monthly annuity, which he began receiving prior to the marriage; each party would retain the vehicle and other personal property in his or her possession and be responsible for his or her own health insurance; and there was no marital debt.

After jury selection and opening statements, Wife presented her case. Wife testified that she spent more than $15,000 to remodel the House in the months leading up to the separation to prepare the property for sale. There was also testimony that on February 6, 2013, Husband deeded the House to her in contemplation of filing a bankruptcy petition due to a large out-of-state judgment against him, and that on March 28, 2013, she deeded the House back to him after he learned that the first transfer would not place the House beyond the reach of a bankruptcy trustee. On the third day of trial, Wife rested her case, and Husband moved for a directed verdict on the issue of equitable division, noting that the parties had stipulated to the division of all personal property acquired during the marriage and arguing that Wife failed to produce sufficient evidence to find that the House or any part of it was marital property subject to equitable division. Among other things, Wife responded that the jury could find that all or part of the House was marital property because Husband deeded it to her and because of the mortgage payments she made during the marriage and the more than $15,000 in separate property that she spent on remodeling. The superior court granted Husband's motion and dismissed the jury. On September 17, 2014, the superior court entered the final judgment and decree of divorce, and on June

4

3, 2015, entered the present Decree, additionally addressing the remaining issue of attorney fees. The superior court denied both parties' requests for attorney fees under OCGA § 19-6-2[3] and Wife's request for attorney fees under OCGA§ 9-15-14, but granted Husband's request for attorney fees under OCGA § 9-15-14, awarding him $14,876.25.

1. Wife contends that the superior court erred in determining as a matter of law that the House constituted Husband's separate property, and therefore, improperly directed a verdict where there was evidence for the jury to determine whether an equitable division of the property was appropriate. She argues that

---

[3]OCGA § 19-6-2 provides:

(a) The grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be:
    (1) Within the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party; and
    (2) A final judgment as to the amount granted, whether the grant is in full or on account, which may be enforced by attachment for contempt of court or by writ of fieri facias, whether the parties subsequently reconcile or not.
(b) Nothing contained in this Code section shall be construed to mean that attorney's fees shall not be awarded at both the temporary hearing and the final hearing.
(c) An attorney may bring an action in his own name to enforce a grant of attorney's fees made to him pursuant to this Code section.

the evidence showed that she invested money in the House by paying for renovations, and that she contributed this money in contemplation of a sale based on Husband's promise that they would be moving into another home; thus, there was evidence to authorize a jury to find that she was entitled to an equitable return on her investment in the House. But, the contention is unavailing.

As noted, there was no dispute that the House was Husband's separate property at the time of the parties' marriage. Thus, an initial question would be the effect, if any, of the brief inter-spousal transfer of the House on its original status as separate property.[4] In *McArthur v. McArthur*, 256 Ga. 762 (353 SE2d 486) (1987), this Court determined that the marital home which the former husband and former wife acquired during the marriage, but which the husband deeded to the wife as a gift, remained "marital property" subject to equitable division and was not "separate property." Thus, the argument is made that an inter-spousal transfer of a spouse's separate property does not lose its status, i.e., separate or marital property, merely as a result of the inter-

---

[4]Evidence of the purpose of the inter-spousal transfer of the House arguably raises a question of "unclean hands" on the part of both parties; however, the doctrine of unclean hands in these circumstances may prohibit the seeking of the imposition of a resulting trust on the property but will not bar an assertion of a claim for equitable division of the property. See *Sparks v. Sparks*, 256 Ga. 788 (353 SE2d 508) (1987).

spousal transfer itself. However, the related question of the character or nature of the transfer must be considered, that is, whether the transfer was a gift.

> In circumstances involving conveyances of real property or the payment of certain funds between spouses, there has been the presumption in Georgia law that such a conveyance or payment is a gift and has the status of marital property.

*Mallard v. Mallard*, 297 Ga. 274, 277-278 (773 SE2d 274) (2015). In this case, the evidence was that the brief transfer to Wife was anything but a gift to her or to the marital estate, and whatever the effect of the conveyance of the House to Wife, its conveyance back to Husband in the same way confirmed its status as his separate property. But, that is not the end of the inquiry.

> [I]f the non-marital property appreciates in value during the marriage and such appreciation results from the efforts of either or both spouses, the appreciation becomes a marital asset subject to equitable division.

Id. at 277, citing *Armour v. Holcombe*, 288 Ga. 50, 51-52(1) (701 SE2d 169) (2010). A method of equitable division is the "source-of-funds" rule, which,

> entitles a spouse contributing non-marital property to an interest in the property in the ratio of the non-marital investment to the total non-marital and marital investment in the property; the remaining property becomes marital property and its value subject to equitable division.

7

*Mallard v. Mallard*, supra at 77.  But, in order to utilize and benefit from this rule, there must be evidence of the appreciation of the property in relation to its fair market value during the parties' subsequent marriage.   Id.

Again, Wife's claims at trial were that she used her separate funds to make payments on the mortgage on the House and that she also used more than $15,000 of her own funds to make improvements to the House, and therefore, that the property was a marital asset.  Even assuming that Wife's mortgage and home-improvement payments for the House were gifts to the marital estate,[5] and further assuming that the mortgage payments contributed to the equity in the House (although the record does not show the amount applied to pay down the principal, and instead there is testimony indicating that the balance due on the mortgage may have actually increased during the marriage), Wife did not present the evidence necessary to apply the source-of-funds rule to determine the value of any such marital property.  There is no evidence of the fair market value of the House at the time of the marriage, at the time of Wife's payments, or at the time

---

[5]While in some circumstances the payment of a debt may be a gift to the marital estate so that the payment itself becomes subject to equitable division, such payment does not convert the property associated with the debt  into marital property, itself subject to equitable division. See *Mallard v. Mallard*, supra at 278.

of the divorce; therefore, there is simply no evidence upon which to calculate the ratio of Wife's investment, much less evidence of any appreciation in the value of the House as a result of either market forces or the efforts of either Wife or Husband or both. See

*Jones-Shaw v. Shaw*, 291 Ga. 252, 253-254 (1) (728 SE2d 646) (2012);

*Maddox v. Maddox*, 278 Ga. 606, 607-609 (1) (604 SE2d 784) (2004).

Therefore, the superior court did not err in ruling that the House was Husband's separate property at the time of the parties' marriage, and remained his separate property at the time of the divorce.

2. Wife also contends that the superior court erred in awarding Husband attorney fees under OCGA § 9-15-14 because she asserts that as a result of her monetary contributions to the mortgage payments and to renovations of the House, there were questions for the jury as to whether the House was marital property and what an equitable division of that property should be. She further complains that the superior court erred in making the award without holding an evidentiary hearing; without making required findings under the appropriate subsection of OCGA § 9-15-14, i.e., not specifying the improper conduct justifying the award; and without explaining how the award of $14,876.25 was

9

calculated in relation to Husband's requested amount of $45,659.06. But, these contentions are likewise unavailing.

As to the complaint about the lack of a hearing, it is true that,

> [u]nless the party against whom attorney fees may be awarded waives a hearing expressly or by its conduct, the court must hold an evidentiary hearing, after due notice of the fees issue, to provide the party the opportunity to confront and challenge the evidence regarding the need for and value of the legal services at issue. A timely objection to a motion for attorney fees under § 9-15-14, even without a specific request for a hearing, is generally sufficient to preclude a waiver by conduct of the right to an evidentiary hearing.

*Williams v. Becker*, 294 Ga. 411, 413 (2) (a) (754 SE2d 11) (2014) (internal citations omitted). But, Wife does not maintain that she ever requested an evidentiary hearing in regard to attorney fees; nor is there any evidence of record of the fact or nature of any timely objection by Wife, including objection to evidence of the calculation or amount of Husband's attorney fees award.[6]

As to Wife's remaining complaint about the lack of a stated basis for the fee award, the award in the Decree expressly shows that it is being made

---

[6]Wife filed in this Court a motion to supplement the record in the present appeal to include her motion for attorney fees, and this Court granted the motion; however, as of the time of this opinion, the record in this appeal has not been so supplemented.

pursuant to OCGA § 9-15-14 (a); it tracks the language of that subsection.[7]

Moreover, the award arguably implicates subsection (b) of the statute as well in that it contains a discussion of Wife's unauthorized attempts to amend the pleadings and consolidated pretrial order, and thereby unnecessarily expanding the proceedings.

Simply, Wife has failed to present a meritorious challenge to the Decree on the bases upon which she was granted review by this Court.[8]

Judgment affirmed. All the Justices concur.

---

[7]The Decree states in relevant part:

> The Court concludes that the Plaintiff proceeded to jury trial without evidence to support her claim of equitable division of marital property, since no evidence was ever produced to support said claim. The Court also concludes that Plaintiff proceeded to jury trial under a claim with respect to which there existed a complete absence of a justiciable issue of law or fact that could reasonably be believed by the Court.

[8] Wife's contention of error with regard to the denial of her motion to amend is not addressed because it is outside the limited scope of the granted discretionary review. See *Franz v. Franz*, 268 Ga. 465, 466 (2) (490 SE2d 377) (1997); *Grim v. Grim*, 268 Ga. 2, 3 (2) (486 SE2d 27) (1997).

S16F0167. HORTON v. HORTON.

MELTON, Justice, concurring.

Because there is some ambiguity in our case law about the impact that a spouse's payments towards the mortgage on the other spouse's separate property may have on the issue of equitable division – especially where there is no increase in value in the separate home – I have some hesitation in affirming the trial court's award of attorney's fees in this case. However, out of deference to the trial court, and given that Wife (1) made no attempt to sort through the gray areas of the law and present a more viable argument for purposes of equitable division; (2) asserted instead a position that was wholly unsupportable; and (3) asserted this meritless position at a late date after the pre-trial order had been issued, I can agree with the majority's decision to affirm.

Our case law suggests that when a spouse pays down a mortgage on a home, that spouse has made a gift to the marital estate that has the status of marital property, but that spouse can only receive an equitable division from the portion of the marital estate to which the gift has been contributed if the value of the home itself increases. See Mallard v. Mallard, 297 Ga. 274, 277-278 (773

SE2d 274) (2015). In this regard, despite the fact that the contributing spouse's payments themselves may become part of marital estate for purposes of equitable division, it is not at all clear that this spouse can receive any equitable division if the value of the home itself does not increase. However, I see no reason why the value of the home should be the sole determining factor for purposes of equitable division in such a scenario.

Here, instead of asserting that she was entitled to an equitable division of her gift to the marital estate through her payments on Husband's separate home, Wife asserted in an untimely manner that (1) the payments themselves could convert Husband's separate home into marital property subject to equitable division, and (2) she was entitled to a dollar for dollar reimbursement of any money she contributed to the home. Neither untimely position is supported by our current case law, which highlights the notion that the trial court properly awarded attorney's fees to Husband in this case. However, both positions also highlight the problems that arise from a heightened focus on the increase in "value" of a home for purposes of determining equitable division instead of focusing on a spouse's actual contributions to the home for purposes of determining equitable division. Specifically, where one spouse's financial

2

contributions to the other spouse's home during the course of a marriage do not result in an increase in value in the home, a claim for an equitable division related to the contributed funds may have some merit, whereas a claim for equitable division relating to the home that is itself connected to the contributed funds may be "frivolous."

In this connection, based on the current state of our case law, I believe that we have to be careful to ensure that we do not get locked into looking primarily at whether the "value" of a home has increased to determine whether equitable division is appropriate. Instead of focusing on the "value" of a home, we should continue to focus on whether there is equity in the home. An increase in the equity of a home during the course of a marriage can result from three scenarios: (1) reducing the debt on the property, (2) an increase in the value of the property, or (3) a reduction in the debt on the property coupled with an increase in the value of the property. In any of these scenarios, a gift to the marital estate from one of the spouses may be involved. There should, therefore, be an effort to calculate an equitable distribution in any of these scenarios where such a gift to the marital estate is actually involved.

For example, suppose a spouse owns a $150,000 home as his or her

3

separate property, and that this home carries $100,000 in debt. If the other spouse pays $30,000 of his or her own funds to make improvements to the separate home and increases its fair market value to $200,000, the equity in the home has increased by $50,000. This is a classic scenario that would be covered by our current case law for purposes of equitable division. See, e.g., <u>Pina v. Pina</u>, 290 Ga. 878, 879 (725 SE2d 301) (2012) (where one spouse brings separate property to marriage, "subsequent increase in the net equity attributable to marital contributions is a marital asset and thus subject to equitable division") (citations and punctuation omitted).

Now, imagine a similar scenario where a spouse owns a separate $150,000 home with $100,000 in debt, and the other spouse pays $30,000 of his or her own funds towards that debt. Due to market forces, however, the fair market value of the separate home remains the same. Although the "value" of the home is the same, the equity in the home has increased by $30,000. In this scenario, just as in the example with a spouse paying his or her own funds for improvements to the other spouse's separate home, the effort to identify the gift to the marital estate and an equitable distribution should be the same. We should not let the focus on increased "value" distract us from the true focus, the increase in equity.

4

For all of the aforementioned reasons, although I agree with the end result reached by the majority, I must write separately to express my concerns about some of the confusion that could be raised by the current state of our case law and the manner in which I believe we should be working to clear up any such potential confusion in the future.