Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/06/2017 08:12 AM CDT

ROBERT L. STEPHENS, APPELLEE, v.
JANET E. STEPHENS, APPELLANT.
___ N.W.2d ___

Filed July 14, 2017.    No. S-16-431.

1. **Divorce: Appeal and Error.** In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Appeal and Error.** Errors must be specifically assigned and argued to be considered by an appellate court.
4. **Statutes: Words and Phrases.** Traditionally, the word "include" in a statute connotes that the provided list of components is not exhaustive and that there are other items includable though not specifically enumerated.
5. **Property Division.** Equitable property division under Neb. Rev. Stat. § 42-365 (Reissue 2016) is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and determine the marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.
6. **Divorce: Property Division.** All property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to this general rule.
7. ____: ____. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.
8. **Divorce: Property Division: Pensions.** Investment earnings accrued during the marriage on the nonmarital portion of a retirement account

may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of either spouse.

9. **Divorce: Property Division.** The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of the appreciation or income.

10. **Property Division: Words and Phrases.** Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property.

11. ____: ____. Passive appreciation is appreciation caused by separate contributions and nonmarital forces.

12. **Divorce: Property Division: Proof.** The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income.

13. **Divorce: Property Division.** Appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.

14. **Corporations: Employer and Employee.** Despite the importance of each employee in a company, a company's value for purposes of active appreciation is attributable only to the efforts of first-tier management or similar persons with control over the asset's value.

15. ____: ____. Courts have uniformly rejected arguments by the owning spouse that the universe of persons in a company that effect its value is so large that no one person has any significant effect.

16. **Property Division: Proof.** The burden of proof to show that property is nonmarital remains with the person making the claim.

17. **Divorce: Mental Competency.** The amount of support awarded under Neb. Rev. Stat. § 42-362 (Reissue 2016) is a matter initially entrusted to the sound discretion of the trial judge, which award, on appeal to this court, is reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed in part, vacated in part, and in part reversed and remanded with directions.

Stefanie Flodman and Steven J. Flodman, of Johnson, Flodman, Guenzel & Widger, for appellant.

David P. Kyker for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Wright, J.

## I. NATURE OF CASE

In this dissolution action, the husband is the cofounder and president of a C corporation and owns 34 percent of its stock. He asserts that only the appreciation, during the marriage, of a business interest that is due to the active efforts of the non-owning spouse is part of the marital estate. He claims, therefore, that none of the almost $5 million in appreciation of his stock interest during the parties' 25-year marriage was subject to equitable division.

## II. BACKGROUND

Janet E. Stephens and Robert L. Stephens were married on September 8, 1991. Twin boys were born of the marriage in 1996. Robert filed for dissolution in 2014.

For approximately 15 years of the marriage, Janet worked as a real estate agent. But during the last 10 years of the marriage, Janet suffered from a mental illness that required periodic hospitalization and left her unable to work. She receives approximately $1,500 per month in Social Security disability income. Robert testified that he did not expect Janet would recover and become employable in the future.

A guardian ad litem (GAL) was appointed to protect Janet's interests at trial. The GAL is also Janet's guardian and conservator. Janet refused to participate in the dissolution proceedings but was represented by counsel.

Both before and during the marriage, Robert worked full time as president of Stephens & Smith Construction Co., Inc. (Stephens & Smith), and his current annual salary is approximately $265,000 per year. Robert received additional income from bonuses and from his other business interests. In 2014, Robert's total taxable income was $503,414. When Janet's mental health allowed, she shared equally with Robert the tasks relating to the care of their children.

The principal issue at trial was what assets should be considered marital and subject to equitable division. The approximate total value of the assets under the court's consideration in the dissolution action was $9 million. There were 166 exhibits entered into evidence without objection, and Robert was the only witness.

### 1. STEPHENS & SMITH

Stephens & Smith is a construction company specializing in concrete work. At all relevant times before and during the marriage, Robert owned stock totaling 34 percent of the stock of Stephens & Smith. Robert cofounded Stephens & Smith in 1971 as a partnership with Michael Smith. Stephens & Smith was incorporated as a C corporation in 1974. According to the exhibits in the record, Robert's stock in Stephens & Smith was worth $298,459 in 1991 before the parties married. Robert's stock in Stephens & Smith at the time of dissolution was worth $5,044,934.16.

Robert worked a "normal eight-hour day," 5 days a week, in his capacity as president. At other times during the marriage, he worked more. He was also on the 12-member board of directors. Robert admitted that he sets his own salary and has a significant role in determining bonuses.

Robert testified that the leadership personnel of Stephens & Smith has not changed since the marriage. He described Stephens & Smith as consisting of six moneymaking departments, each with its own department head. Robert was involved in selecting and training the leadership within Stephens & Smith. At all times during the marriage, Stephens & Smith had approximately 200 employees. Robert considered at least 20 of those employees "integral," though he believed every employee was important.

Robert described his role as president as "constantly changing." He made financial and investment decisions for Stephens & Smith and performed "some management real estate oversight." As part of obtaining lending to fund Stephens &

Smith's projects, Robert also personally guaranteed millions of dollars in loans for Stephens & Smith's operations.

Robert attended human resources, rental management, shareholder, and board meetings. He occasionally consulted with and advised the department heads for the company. Robert conceded that he was an integral part of the success of Stephens & Smith. But Robert suggested that, based on his latest bonus of 6 percent, "maybe I provide 6 percent of the leadership."

### 2. R.I.P., INC.

R.I.P., Inc., is a wholly owned subsidiary of Stephens & Smith. It holds Stephens & Smith's real estate investments and represents approximately two-thirds of Stephens & Smith's value. R.I.P. was created before the marriage with capital from Stephens & Smith, and continued thereafter to be funded by the profits of Stephens & Smith. R.I.P. owns a percentage of The Mystic Pines Apartments, L.L.C.; Eagles Landing Apartments, LLC; Aardvark Antique Mall, LLC; and Village Square Apartments, LLC. Although there was no testimony specifically on this point, Robert's estimated interest in Stephens & Smith of $5,044,934.16 apparently includes any interests held through R.I.P.

### 3. INFINITY S DEVELOPMENT CO., HERITAGE SQUARE PARTNERS, SMITH AND STEPHENS REAL ESTATE, AND AARDVARK PARTNERS

#### (a) Infinity S Development

Infinity S Development Co. (Infinity) is a partnership between Robert, Smith, and one other partner. Infinity is predominantly involved in the self-storage business, and at the time of trial, it owned approximately 900 storage units. At one point, Robert testified that no capital has been added to Infinity since the marriage. Its expansion has been paid for with the partnership's profits. Robert also indicated, however, that as with Stephens & Smith, he had personally guaranteed bank loans to Infinity.

The day-to-day operation of Infinity is run by a hired manager. But Robert and the two other partners make the larger decisions, such as what to build. Robert participates in monthly meetings to analyze occupancy rates and financial statements. Robert owns one-fourth of Infinity. According to the exhibits in evidence, at the time of trial, Robert's equity interest in Infinity was $1,243,232. In contrast, when the parties married, Robert's interest in Infinity was worth $270,553.

### (b) Heritage Square Partners

Heritage Square Partners (Heritage) was formed as an offshoot of Infinity just prior to the marriage. The partnership consists of Robert; Smith; and, originally, three other persons. It owns one building that was capitalized with funds from Infinity and with loans. No other funds have been funneled into Heritage since the marriage. The building provides rental income and is managed by a person employed by the partnership. Robert is not involved in the day-to-day operation of Heritage. At the time of trial, Robert's equity interest in Heritage was $403,884. It was unclear what the value of Robert's interest in Heritage was at the time the parties married.

### (c) Smith and Stephens Real Estate

Smith and Stephens Real Estate was created by Robert and Smith before the marriage and owns a single piece of property that was purchased before the marriage. The value of Robert's interest in Smith and Stephens Real Estate when the parties married was $88,830, and it was $140,000 at the time of trial.

### (d) Aardvark Partners

Aardvark Partners, LLC, was formed after the marriage. It was formed by the five partners of Infinity and with R.I.P. as the sixth partner. R.I.P. owns 50 percent of Aardvark Partners. The $500,000 purchase of the real estate held by Aardvark Partners was capitalized with $50,000 from each of five individual

investor partners from Infinity and $250,000 from R.I.P. Each individual obtained the $50,000 contribution through a distribution of $55,000 from Infinity.

Aardvark Partners owns a property that consists of a cluster of buildings and parking lots. Robert is not involved in the day-to-day operation of Aardvark Partners, which is run by a hired manager. At the time of trial, Robert's interest in Aardvark Partners was valued at $306,429.

### 4. AARDVARK ANTIQUE MALL, THE MYSTIC PINES APARTMENTS, AND EAGLES LANDING APARTMENTS

Robert conceded at trial that his ownership interests in Aardvark Antique Mall, The Mystic Pines Apartments, and Eagles Landing Apartments were marital property. At the time of trial, Aardvark Antique Mall was valued at $66,474, The Mystic Pines Apartments were valued at $923,687, and Eagles Landing Apartments were valued at $381,385. Robert's combined interest in the three properties produced approximately $60,000 per year in owner draws, and he proposed that it would be most beneficial for all parties to transfer to Janet the ownership interest in these properties.

Janet's attorney and GAL questioned the practicality of making Janet part-owner of the properties. Janet's counsel also pointed out that transfer of ownership would require the cooperation of the other partners, since at least two of the entities required owner approval before allowing new members. Robert assured the court that the partners having an interest in these properties would cooperate.

### 5. DECREE

The court awarded to Robert the marital home, valued at $542,000, and the mortgage debt therein, in the amount of $337,078. Also awarded to Robert, subject to liens or encumbrances, were a "60-foot Gen[i]e Manlift" valued at $20,000, a jet ski valued at $1,740, a 1998 motorcycle valued at $7,625, a 2003 automobile valued at $16,904, and a 2005 recreation

vehicle valued at $60,250. The only debt associated with these items appears to be an automobile loan in the amount of $19,893.

Robert was awarded $31,965 in household goods and artwork. Robert was awarded a credit union checking account with a balance of $553.50 and a bank checking account with a balance of $100. Robert was awarded Stephens & Smith retirement plans valued at $326,104.79. The retirement plans were formed after the marriage, and Robert had conceded they were marital assets.

Robert was solely responsible for a personal loan in 2009 from his sister in the amount of $480,589, for the purpose of investing in Eagles Landing Apartments and The Mystic Pines Apartments. Robert was awarded any and all bank or investment accounts, life insurance policies and annuities, and any household goods or personal property in his possession not otherwise allocated.

The court awarded to Janet, along with any indebtedness thereon, a 2012 automobile valued at $27,357. The court awarded to Janet $18,510 in household goods and artwork, any and all jewelry, including a $10,000 ring that Janet had purportedly flushed down the toilet. It was unclear to what extent the other jewelry could be located at the time of trial. The jewelry, minus the ring, was appraised at $72,760. Janet was awarded an account at a local bank with a balance at the time of trial of $10,010. She was awarded any and all bank or investment accounts, life insurance policies and annuities, and any household goods or personal property in her possession not otherwise allocated.

The court found that Robert's combined interest in Aardvark Antique Mall ($66,474), The Mystic Pines Apartments ($923,687), and Eagles Landing Apartments ($381,385) was part of the marital estate. In light of the tax disadvantages of the forced buying or selling of the business interests, and the court's trust that Robert would conduct his business affairs so as not to disadvantage Janet, the court awarded Robert and

Janet each one-half of the total interest in these properties through a transfer of ownership. Robert was ordered to complete all documentation of such joint ownership within 30 days of the decree.

The court found that Robert's ownership interests in Infinity, Heritage, Smith and Stephens Real Estate, and Aardvark Partners were traceable to premarital assets and that the entirety of the appreciation in value of these interests during the marriage was excludable from the marital estate, because Robert had a "passive" role in such appreciation. It noted that no marital assets and no active effort by Janet contributed to these entities. The court awarded these interests in their entirety to Robert.

The court also found that Robert's 34 percent ownership interest in Stephens & Smith was, in its entirety, nonmarital. It did not specifically mention R.I.P. in its decree, which was presumably treated as part of Stephens & Smith.

The court noted that no marital funds were contributed to Stephens & Smith. And, as for the substantial appreciation of the company's value during the marriage, the court cited *Van Newkirk v. Van Newkirk*[1] and *Buche v. Buche*.[2] Ultimately, the court concluded that Robert had met his burden of proof that his stock, including the appreciation during the marriage, was premarital property. In this regard, the court reasoned that the appreciation was "due to a combination of factors, not the least of which is organic growth" and that "[t]here is no evidence to suggest what part of that growth can be attributed to [Robert]."

Although the court concluded that the entirety of Stephens & Smith was nonmarital property, it nevertheless awarded a "*Grace* award"[3] to Janet based on the court's valuation of Robert's stock interest in Stephens & Smith. The court found

---

[1] *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982).

[2] *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988).

[3] See *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986).

that other considerations and equities present in the case justified an award to Janet of $1.1 million to be paid in installments of $100,000 per year, with interest of 2.51 percent on the outstanding balance. The court explained as to the mathematical basis for such award that if the appreciation of Robert's ownership interest in Stephens & Smith were marital, one-third of that interest would be $1.55 million and one-half would be $2.35 million.

Other marital property, a coin collection and various items held in storage units, had not yet been given an estimated value and were ordered divided by equal value or sold with the proceeds to be divided equally between Robert and Janet.

The court found that Janet was suffering from a mental illness as defined by Neb. Rev. Stat. § 42-362 (Reissue 2016) and awarded alimony under § 42-362 in the amount of $1,000 per month for 120 months. It ordered Robert to maintain until August 20, 2020, a life insurance policy in the amount of $1 million, with Janet as the beneficiary.

Janet appeals from the decree. Robert did not cross-appeal.

### III. ASSIGNMENTS OF ERROR

Janet assigns that the district court erred in (1) finding that the appreciation in the value of Stephens & Smith during the parties' marriage should be considered nonmarital, (2) failing to find that the spousal support ordered under § 42-362 should continue until Janet's mental disability is corrected, and (3) ordering the division of marital property held in a small business or partnership when the articles of organization do not allow for the same.

### IV. STANDARD OF REVIEW

[1,2] In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[4] A judicial abuse of discretion exists if the reasons or

---

[4] *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016).

rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[5]

## V. ANALYSIS

### 1. PROPERTY DIVISION

[3] Janet first assigns as error the district court's finding that the appreciation during the parties' marriage of Robert's interest in Stephens & Smith should be considered nonmarital. She does not assign as error the court's determination that other assets at issue at trial were nonmarital. Errors must be specifically assigned and argued to be considered by an appellate court.[6]

Thus, we consider only whether the district court erred in its classification of Stephens & Smith, together with its wholly owned subsidiary, R.I.P.—which we hereafter refer to collectively as "Stephens & Smith." We do not consider whether the court erred with respect to its classification of Infinity, Heritage, Smith and Stephens Real Estate, or Aardvark Partners as nonmarital assets. And because Robert did not cross-appeal, neither do we consider whether the court erred in designating Aardvark Antique Mall, The Mystic Pines Apartments, and Eagles Landing Apartments as marital. We do consider the propriety of the "*Grace* award," as it is inseparable from the court's determination that Stephens & Smith was nonmarital.

Neb. Rev. Stat. § 42-365 (Reissue 2016) provides that when a dissolution of marriage is decreed, the court may order the

> division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers

---

[5] *Id.*

[6] *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006).

or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

Section 42-365 provides that "[t]he purpose of a property division is to distribute the *marital assets* equitably between the parties." (Emphasis supplied.)

No statute defines "marital assets." Neb. Rev. Stat. § 42-366(8) (Reissue 2016) states that in the event the parties fail to agree upon a property settlement that is conscionable, the court shall order the equitable division of the marital estate, which "shall include . . . any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested." But no statutory provision relating to the equitable division of property specifically addresses business entities or the concept of appreciation.

[4] We find no merit to Robert's argument that § 42-366 is a legislative mandate to exclude from the marital estate items not specifically listed in § 42-366. Traditionally, the word "include" in a statute connotes that the provided list of components is not exhaustive and that there are other items includable though not specifically enumerated.[7] And § 42-366 seems particularly concerned with clarifying the status of nonvested assets. Business interests like Stephens & Smith, and indeed many other assets such as the marital home, do not fall into that category. Thus, it is no surprise that they are not enumerated. Moreover, while the Legislature specified the condition in § 42-366(8) "owned by either party" as

---

[7] See *Samantar v. Yousuf*, 560 U.S. 305, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010). See, also, *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910 (11th Cir. 2013); *Federal Election Com'n v. Mass. Citizens for Life*, 769 F.2d 13 (1st Cir. 1985); *Highway & City Freight Drivers, Etc. v. Gordon*, 576 F.2d 1285 (8th Cir. 1978); *Matter of Adoption by W.P. and M.P.*, 308 N.J. Super. 376, 706 A.2d 198 (1998); *Auer v. Com.*, 46 Va. App. 637, 621 S.E.2d 140 (2005).

to the assets listed, we have held as to these listed assets that only the portion of such deferred compensation benefits that was earned or contributed to during the marriage is part of the marital estate.[8] In sum, § 42-366 does not indicate whether appreciation during the marriage of a nonmarital business or property interest is a marital asset. That question has instead long been determined by case law.

[5] Since 2000, we classify as a threshold matter the parties' property as either marital or nonmarital. In *Meints v. Meints*,[9] we said:

> Equitable property division under § 42-365 is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and determine the marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

Such division between the marital and nonmarital estate is known as dual classification. Prior to *Meints*, our case law was not entirely clear as to whether we operated under a dual classification system. Most jurisdictions adopt the dual classification model and preclude under this model the equitable distribution of separate property.[10] "Equitable considerations are generally no excuse for failing to follow the statutory classification process."[11]

[6,7] We have said that all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to this

---

[8] See, e.g., *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015).

[9] *Meints v. Meints*, 258 Neb. 1017, 1023, 608 N.W.2d 564, 569 (2000). See, also, 3 Brett R. Turner, Equitable Distribution of Property, appendix A at 274 (3d ed. 2005).

[10] See 1 Brett R. Turner, Equitable Distribution of Property § 2:10 (3d ed. 2005).

[11] See *id.*, § 5:7 at 266.

general rule.[12] Thus, for example, income from either party that accumulates during the marriage is a marital asset.[13] Any given property can constitute a mixture of marital and non-marital interests; a portion of an asset can be marital property while another portion can be separate property.[14] Therefore, the original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital.[15]

[8] In the recent case of *Stanosheck v. Jeanette*,[16] we said that investment earnings accrued during the marriage on the nonmarital portion of a retirement account may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the non-marital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of *either* spouse. In *Coufal v. Coufal*,[17] we similarly examined whether the increase in the value of the premarital capital in a retirement account was a marital asset. After examining cases from other jurisdictions discussing the active appreciation rule, we held that the appreciation was nonmarital, because it was not caused by the direct or indirect efforts of "either spouse."[18]

[9-11] Other jurisdictions have reached a "remarkable degree of consensus" that appreciation or income of separate property is marital property to the extent that it was caused by marital funds or marital efforts.[19] The active appreciation

---

[12] See *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

[13] See *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001).

[14] See 1 Turner, *supra* note 10, § 5:20.

[15] See *id.*

[16] *Stanosheck v. Jeanette, supra* note 4.

[17] *Coufal v. Coufal, supra* note 8.

[18] *Id*. at 384, 866 N.W.2d at 79.

[19] 1 Turner, *supra* note 10, § 5:54 at 546. See, also, Annot., 39 A.L.R.6th 205 (2008).

rule sets forth the relevant test to determine to what extent marital efforts caused any part of the appreciation or income.[20] "Appreciation caused by marital contributions is known as *active appreciation*, and it constitutes marital property in the first instance."[21] In contrast, passive appreciation is appreciation caused by separate contributions and nonmarital forces.[22] And most states, by statute or case law, define marital contribution broadly to include the efforts of either the owning or the nonowning spouse.[23]

Robert, however, argues that *Stanosheck* and *Coufal*, inasmuch as they recognize as marital property growth due to the efforts of the owning spouse, are limited to retirement accounts. He argues that appreciation of business interests outside of retirement accounts should be considered a marital asset only if the appreciation during the marriage was caused by the efforts of the nonowning spouse.

In support of this position, Robert relies on statements by this court in cases decided before we clearly adopted a dual classification system[24] and under facts demonstrating that the appreciation of the nonmarital asset was due principally to inflation and market forces.[25] Under these circumstances, in *Van Newkirk v. Van Newkirk*, we said that property acquired by gift or inheritance is not considered part of the marital estate unless

---

[20] See 1 Turner, *supra* note 10, § 5:55.

[21] *Id*. at 549.

[22] *Id.*

[23] *Id*., § 5:56. See, also, e.g., *Hanson v. Hanson*, 125 P.3d 299 (Alaska 2005); *Horton v. Horton*, 299 Ga. 46, 785 S.E.2d 891 (2016); *Nardini v. Nardini*, 414 N.W.2d 184 (Minn. 1987). See, generally, 39 A.L.R.6th, *supra* note 19.

[24] See *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980) (consideration of inherited property depends on equities involved).

[25] See, *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Ross v. Ross*, 219 Neb. 528, 364 N.W.2d 508 (1985); *Van Newkirk v. Van Newkirk, supra* note 1.

both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.[26]

But in *Rezac v. Rezac*,[27] decided only 3 years after *Van Newkirk*, we recognized as a marital asset the appreciation of nonmarital property due solely to the contributions of the owning spouse during the marriage. We held in *Rezac* that the lower court did not err in dividing as marital property the entirety of the appreciated value of the husband's premarital stock in a corporation. We explained that if the husband's ownership of the corporation had been merely "nominal" or the increase in the value of the stock during the marriage had been "strictly an inflationary increase,"[28] there would have been a better argument that the stock should be viewed as continuing to be separate property. But such was not the case.

We observed in *Rezac* that the lower court was correct in treating the appreciation of stock as marital property, because the corporation had paid for substantial improvements that increased the corporate value, in lieu of distributing profits to its owners as income. We explained that "had the corporation not made substantial investments in improving its facility, the value of the stock may have remained about the same but this respondent would have received additional income resulting in marital assets which would be subject to division at the time of the dissolution."[29]

---

[26] *Van Newkirk v. Van Newkirk, supra* note 1, 212 Neb. at 733, 325 N.W.2d at 834.

[27] *Rezac v. Rezac*, 221 Neb. 516, 378 N.W.2d 196 (1985).

[28] *Id*. at 518, 378 N.W.2d at 198.

[29] *Id*. See, also, *Sughroue v. Sughroue*, 19 Neb. App. 912, 815 N.W.2d 210 (2012).

Though we observed in *Rezac* that the appreciation was through reinvestment of income, other courts and legal authorities find no meaningful distinction between appreciation through reinvestment of income and appreciation through active efforts other than reinvestment.[30] Income from and appreciation of an asset are fundamentally similar insofar as they are both ways that the property generates value.[31] The only difference is that income takes the form of a new asset, while appreciation takes the form of added value.[32] This difference in form bears "no relation to the policies behind equitable distribution."[33]

Nevertheless, in *Grace v. Grace*,[34] a case decided a few years after *Van Newkirk* and *Rezac*, we implicitly accepted without analysis an appreciation/income distinction. There, because of the inequities created by the application of such a distinction, we were compelled to consider the value of nonmarital assets in determining the equitable amount of the property division.

In *Grace*, we applied our statement in *Van Newkirk* to hold that the husband's interest in a premarital family business was nonmarital. Then we said that whether an asset is marital is but one consideration in the equitable division of property.[35] Especially in light of the minimal accumulation of marital assets due to the provision by the business of the marital home and other expenses, we held that the wife should be awarded a lump sum representing her portion of the husband's corporate interest—even though the wife did not contribute to the improvement or operation of the business.

---

[30] See 1 Turner, *supra* note 10, § 5:50 (and cases cited therein).

[31] See *id*., § 5:50.

[32] See *id*.

[33] *Id*. at 524.

[34] *Grace v. Grace, supra* note 3.

[35] *Id*.

A series of cases from the Nebraska Court of Appeals have since recognized so-called *Grace* awards in order to achieve an equitable result when the application of our statement in *Van Newkirk* renders appreciation during the marriage nonmarital.[36] It has not been clear under this line of case law what exceptional circumstances warrant a *Grace* award. The mathematics behind the amount of such *Grace* awards have likewise never been clear. But *Grace* awards generally represent a smaller division of the asset in question than the expected division if the asset were considered marital.[37]

We find inapplicable to the modern dual classification system any statements in *Van Newkirk* and its progeny which fail to recognize as a marital asset appreciation through the active efforts of the owning spouse. For purposes of the active appreciation rule, there is no reason to treat appreciation of a nonmarital asset differently from income derived from a nonmarital asset during the marriage. We conclude, likewise, that the principles set forth in *Grace* are no longer applicable to the dual classification system set forth by this court in *Meints v. Meints*.[38] This is not to say that a court would, in every conceivable circumstance, be forbidden from taking into account nonmarital assets in its equitable division of the marital estate, but our adoption of the active appreciation rule as set forth herein limits the need for such an extraordinary recourse.

[12] We hold, therefore, that the principles set forth in *Stanosheck* apply equally to appreciation or income during the marriage of any nonmarital asset. Thus, accrued investment earnings or appreciation of nonmarital assets during

---

[36] See, *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012); *Shuck v. Shuck*, 18 Neb. App. 867, 806 N.W.2d 580 (2011); *Charron v. Charron*, 16 Neb. App. 724, 751 N.W.2d 645 (2008); *Walker v. Walker*, 9 Neb. App. 834, 622 N.W.2d 410 (2001).

[37] See *id.*

[38] *Meints v. Meints, supra* note 9.

the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.[39] We agree with many other jurisdictions that the burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income.[40] This is the better policy, because it places the burden on the party who has the best access to the relevant evidence.[41]

[13] We expressly adopt the active appreciation rule that does not distinguish between the efforts of the owning spouse and the efforts of the nonowning spouse. We agree that the majority rule recognizing as a marital contribution the efforts of either the owning or the nonowning spouse is "clearly correct, as the marital estate should include the fruits of either spouse's efforts during the marriage."[42] We hold that the appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.

Under the district court's interpretation of our admittedly confusing line of case law, it concluded that appreciation

---

[39] *Stanosheck v. Jeanette, supra* note 4.

[40] 1 Turner, *supra* note 10, § 5:56.

[41] See *id*., citing *Harrower v. Harrower*, 71 P.3d 854 (Alaska 2003); *Chapman v. Chapman*, 866 So. 2d 118 (Fla. App. 2004); *Macdonald v. Macdonald*, 532 A.2d 1046 (Me. 1987); *Berenberg v. Berenberg*, 474 N.W.2d 843 (Minn. App. 1991); *Waring v. Waring*, 747 So. 2d 252 (Miss. 1999); *Klaus v. Klaus*, 918 S.W.2d 407 (Mo. App. 1996); *Jurado v. Jurado*, 119 N.M. 522, 892 P.2d 969 (N.M. App. 1995); *Pulice v. Pulice*, 242 A.D.2d 527, 661 N.Y.S.2d 675 (1997); *Ciobanu v. Ciobanu*, 104 N.C. App. 461, 409 S.E.2d 749 (1991); *Thielenhaus v. Thielenhaus*, 890 P.2d 925 (Okla. 1995); *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. App. 1996); *Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999); *In re Marriage of Popp v. Popp*, 146 Wis. 2d 778, 432 N.W.2d 600 (Wis. App. 1988).

[42] 1 Turner, *supra* note 10, § 5:56 at 564.

of Stephens & Smith due to Robert's active efforts was not includable in the marital estate. The court accordingly made no findings concerning what portion of Stephens & Smith's appreciation was attributable to Robert's active efforts. Because Janet did not directly contribute to Stephens & Smith, the court concluded that the entirety of Stephens & Smith's appreciation during the marriage was nonmarital. In its attempt to make an equitable distribution after having thus excluded approximately $5 million from the marital estate, the court awarded as a *Grace* award approximately one-fourth of Robert's 34-percent interest in Stephens & Smith.

Based upon the active appreciation rule, the court should not have excluded Stephens & Smith from the marital estate and substituted a *Grace* award. We reverse the court's determination of the marital property to the extent that it did not include the increase in value of Robert's interest in Stephens & Smith, and we vacate the court's *Grace* award.

The classification of the growth in value of Robert's stock, including that due to retained earnings by Stephens & Smith,[43] depends on the extent that the overall growth of the company was caused by Robert's active efforts. In this case, there was no dispute that Stephens & Smith appreciated significantly during the marriage and that Robert's active efforts played a significant role in that appreciation. Indeed, the underlying facts were not contested. Robert, cofounder and president of Stephens & Smith, worked full time in that capacity during the entirety of the 25-year marriage.

[14,15] Despite the importance of each employee in a company, a company's value for purposes of active appreciation is attributable only to the efforts of first-tier management or similar persons with control over the asset's value.[44] First-tier management is responsible for ensuring the policy, direction, and good will that contributes most directly to the value of a

---

[43] See *id.*, § 5:53.

[44] See *id.*, § 5:57.

company's stock.[45] Courts have uniformly rejected arguments by the owning spouse that the universe of persons in a company that effect its value is so large that no one person has any significant effect.[46]

Even favorable market conditions are not passive inasmuch as they create merely the opportunity that the skilled, owning spouse detects and seizes.[47] Nor does an argument that the "'ground work'" for growth was laid before the marriage preclude as a marital asset substantial appreciation of a company's value during the marriage.[48] No person wears all hats in a complex business operation, but it is nevertheless possible for one person to be critical to such operation's growth and development.[49] The appreciation of a company's stock may be due not just to a first-tier manager's direct efforts, but to his or her mere presence, when the individual is identified with the business entity and tied to its good will.[50]

[16] It was Robert's burden to demonstrate that any portion of Stephens & Smith's appreciation was due to passive forces or the active efforts of third parties who would qualify as first-tier management or similar. In presenting the evidence at trial, Robert was on notice of the possibility that the court would apply the active appreciation rule. And it has been the long-standing position of this court that the burden of proof to show that property is nonmarital remains with the person making the claim.[51] In light of this burden of proof, it is clear on the record presented that Robert's active efforts were responsible

---

[45] See, *Hanson v. Hanson, supra* note 23; *Berrie v. Berrie*, 252 N.J. Super. 635, 600 A.2d 512 (1991); 1 Turner, *supra* note 10, § 5:57.

[46] 1 Turner, *supra* note 10, § 5:57.

[47] See *id*.

[48] See *Innerbichler v. Innerbichler*, 132 Md. App. 207, 231, 752 A.2d 291, 304 (2000).

[49] *Id*.

[50] See *Berrie v. Berrie, supra* note 45.

[51] *Heald v. Heald, supra* note 12.

for at least 34 percent of Stephens & Smith's growth during the 25 years that Robert and Janet were married.

We accordingly direct the court to consider as marital the entirety of the increase during the marriage of Robert's 34-percent stock interest in Stephens & Smith. Because the district court is in the better position to make an equitable division, we remand the cause with directions to determine the equitable distribution of that marital asset.

## 2. Spousal Support

We turn next to Janet's allegation that the district court erred in failing to award spousal support under § 42-362 for so long as she remains mentally ill. Janet does not take issue with the monthly amount that was awarded, only its duration.

Section 42-362 states in relevant part:

> When a marriage is dissolved and the evidence indicates that either spouse is mentally ill, the court may, at the time of dissolving the marriage or at any time thereafter, make such order for the support and maintenance of such mentally ill person as it may deem necessary and proper, having due regard to the property and income of the parties, and the court may require the party ordered to provide support and maintenance to file a bond or otherwise give security for such support. Such an order for support may be entered upon the application of the guardian or guardian ad litem or of any person, county, municipality, or institution charged with the support of such mentally ill person. The order for support may, if necessary, be revised from time to time on like application.

[17] The amount of support awarded under § 42-362 is a matter initially entrusted to the sound discretion of the trial judge, which award, on appeal to this court, is reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion.[52]

---

[52] *Black v. Black*, 223 Neb. 203, 388 N.W.2d 815 (1986).

Section 42-362 empowers the court to order the payment of such support and maintenance "'as it may deem necessary and proper, having due regard to the property and income of the parties'" and, to that extent, parallels the alimony contemplated by § 42-365, but provides an additional specific ground to be considered—the mental illness of a spouse.[53]

However, support and maintenance of a mentally ill spouse and alimony are not the same in all respects.[54] In *Black v. Black*,[55] we said that although allowances of alimony in the form of requiring one to pay a fixed sum for an indefinite period of time are not favored, payment of support and maintenance of a mentally ill spouse "should continue so long as, and only so long as, the mental illness continues" or the spouse remarries. We accordingly modified the dissolution court's award of spousal support under § 42-362 until death or remarriage to provide that it shall continue only so long as the mental illness continued and the spouse did not remarry.

We have never held that a court must always award support under § 42-362 for so long as the mental illness continues. Nothing in the language of the statute indicates this is required. Rather, § 42-362 contemplates that the order of support under this section "may, if necessary, be revised from time to time on like application." We find that the district court did not abuse its discretion in making the award for 120 months. Because of our determination that Stephens & Smith is a marital asset, the court in its discretion may reconsider the amount of alimony.[56]

---

[53] *Id*. at 208, 388 N.W.2d at 819.

[54] *Id*.

[55] *Id*. at 209, 388 N.W.2d at 820.

[56] See, *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993); *Olson v. Olson*, 195 Neb. 8, 236 N.W.2d 618 (1975); *Corn v. Corn*, 190 Neb. 383, 208 N.W.2d 678 (1973) (although alimony and distribution of property are technically distinct and have different purposes in marriage dissolution proceedings, they are closely related and circumstances may require that they be considered together).

### 3. ARTICLES OF INCORPORATION

Janet last assigns as error the fact that the court ordered the transfer to her of ownership interests in Aardvark Antique Mall, The Mystic Pines Apartments, and Eagles Landing Apartments, instead of a cash award. Janet's sole objection is her concern that the other partners will not consent to her co-ownership. Robert was ordered to complete all documentation of such joint ownership within 30 days of the decree. In the event that did not occur, and it appears that a transfer of ownership will not take place in spite of Robert's best efforts, then the parties are free to seek modification of the decree.[57] The court did not abuse its discretion in not ordering a cash award.

## VI. CONCLUSION

We affirm the distribution of ownership interests in Aardvark Antique Mall, The Mystic Pines Apartments, and Eagles Landing Apartments, instead of a cash award. We reverse the division of the property described as Stephens & Smith and direct the court to include the increase in value from the date of the marriage to the dissolution as a marital asset. The *Grace* award is reversed and vacated, because the court is directed to include the increase in value of Robert's interest in Stephens & Smith as a marital asset. We affirm the award of alimony subject to the court's discretion as set forth in this opinion.

AFFIRMED IN PART, VACATED IN PART, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.

STACY, J., not participating.

---

[57] See *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015).